[Cite as *State v. Champlin*, 2014-Ohio-1345.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-A-0021** |
| DAVID W. CHAMPLIN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas.
Case No. 2012 CR 549.

Judgment: Affirmed.

*Nicholas A. Iarocci*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047-1092 (For Plaintiff-Appellee).

*Michael A. Hiener*, P.O. Box 1, Jefferson, OH 44047 (For Defendant-Appellant).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, David W. Champlin, appeals the judgment of the Ashtabula County Court of Common Pleas finding appellant guilty of murder and felonious assault. For the following reasons, the judgment is affirmed.

{¶2} The events that led to the assault and murder in this case began on August 21, 2012. On that day, Robert Walls, a close friend of the victim, Gregory Attkisson, was road testing a vehicle that he had repaired for a neighbor. As Mr. Walls

drove by the property where Mr. Attkisson lived, Mr. Attkisson flagged him down. Mr. Attkisson and his fiancée, Brenda Greene, lived in a building behind the property's main home. Mr. Walls stopped the vehicle and talked with Mr. Attkisson and Ms. Greene before returning to his home, a few houses down. On the short drive from Mr. Attkisson's property to his own home, Mr. Walls encountered appellant who directed profane words and gestures towards him.

{¶3} Shortly after returning home, Mr. Walls received a call from Ms. Greene for help. Mr. Walls then returned to Ms. Greene and Mr. Attkisson's home. When he arrived, Mr. Walls witnessed a verbal altercation taking place between Mr. Attkisson and appellant. During the altercation, appellant alleged that Mr. Attkisson had raped appellant's sister. Mr. Attkisson was holding a kitchen knife at this time, as he was preparing for a barbeque. The confrontation ended shortly after Mr. Walls' arrival, when appellant left the scene.

{¶4} The following day, August 22, 2012, the conflict between appellant and Mr. Attkisson re-ignited and escalated. Jerry Jones and Danny Jones, who were outside on their front porch, witnessed the incident. Another altercation occurred, and sometime during the short incident, Mr. Attkisson's head was slammed against the concrete. Witnesses saw appellant leave the scene and return to his home. Police were called by Jerry Jones' wife.

{¶5} By the time police responded to the scene, Mr. Attkisson had already left and walked to Mr. Walls' home. There, he drank a beer with Mr. Walls and Mr. Walls' step-son. Police then went to Mr. Attkisson's home, but he was not there. At the home,

2

police alerted Ms. Greene that Mr. Attkisson had been assaulted. The police were also unable to locate appellant.

{¶6} A couple of hours after the incident, Mr. Attkisson returned home. Mr. Attkisson's head was still bleeding, he appeared very shaky and wobbly, and his speech was slurred. Mr. Attkisson went to bed, and Ms. Greene went to a birthday party for Mr. Walls' step-son. Upon returning home, Ms. Greene joined Mr. Attkisson in bed.

{¶7} Around 5:00 a.m. on August 23, 2012, Ms. Greene attempted to wake Mr. Attkisson, but he was unresponsive. Ms. Greene called 9-1-1.

{¶8} Upon the arrival of paramedics, Mr. Attkisson was transported to Ashtabula County Medical Center and then by air to Metro Health in Cleveland. At Metro Health, trauma surgeons treated Mr. Attkisson for large amounts of blood in his brain. Surgery was performed to remove the right side of the skull to allow Mr. Attkisson's brain to swell. Mr. Attkisson was then placed on life support. However, Mr. Attkisson never regained consciousness, and he died on August 30, 2012, at Metro Health.

{¶9} On September 20, 2012, appellant was indicted on one count of murder, in violation of R.C. 2903.02(B), an unclassified felony; and one count of felonious assault, in violation of R.C. 2903.11(A)(1), a felony of the second degree. Appellant pled not guilty to both counts.

{¶10} On March 5, 2013, a jury trial commenced. At the conclusion of the jury trial, appellant was found guilty on both counts. The trial court merged both counts for sentencing purposes, and on March 11, 2013, the trial court sentenced appellant to an indefinite prison term of 15 years to life on the murder count.

{¶11} Appellant filed a timely appeal and asserts four assignments of error. His first assignment of error states:

{¶12} "The trial court erred when it did not grant Appellant's motion for acquittal under Crim.R. 29."

{¶13} In this assignment, appellant argues the trial court should have granted his Crim.R. 29 motion to dismiss because the amended indictment count alleging murder incorrectly states the date of the offense as August 22, 2012. Appellant argues this date is incorrect because the victim was still alive on August 22, 2012, and did not die until August 30, 2012. As discussed below, appellant's first assignment of error is without merit.

{¶14} Appellant was indicted and convicted of felonious assault pursuant to R.C. 2903.11(A)(1), which states: "(A) No person shall knowingly * * * (1) Cause serious physical harm to another * * *." Appellant was also indicted and convicted of murder pursuant to R.C. 2903.02(B), which states: "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree * * *." Appellant's felonious assault of Mr. Attkisson was the underlying felony to support appellant's conviction for murder.

{¶15} On October 2, 2012, the trial court granted appellee, the state of Ohio's, motion to amend the original indictment. In its judgment entry granting the state's motion, the trial court amended the murder count to read:

> On or about 08/22/2012, in the City of Ashtabula, County of Ashtabula, and State of Ohio, one **DAVID W. CHAMPLIN** did knowingly cause the death of another, to-wit: Gregory C. Attkisson, aka Mike Johnson, a proximate result of defendant committing or

4

attempting to commit an offense of violence that is a felony of the first or second degree, to-wit: Felonious Assault, a violation of 2903.11(A)(1) * * *.

{¶16} The date of the murder offense, as stated in the judgment entry granting appellee's motion to amend the original indictment, was August 22, 2012. This date was proper even though Mr. Attkisson did not pass away until August 30, 2012. The indictment correctly states the date of the felonious assault, which was the date appellant acted to cause Mr. Attkisson's death. Furthermore, by August 22, 2012, appellant had taken all the actions necessary for Mr. Attkisson's death to occur. Because appellant had committed all the acts required to support the murder indictment on August 22, 2012, the trial court did not err when it rejected appellant's motion for acquittal.

{¶17} This result is consistent with that reached by the Tenth District in *State v. Walker*, 10th Dist. Franklin Nos. 78AP-669 & 7AP-670, 1979 Ohio App. LEXIS 12543 (Nov. 6, 1979). In *Walker*, a similarly-situated appellant argued that the indictment incorrectly stated the date of the offense because the victim did not die until several weeks after the initial shooting. *Id.* at *20. In concluding that the date in the indictment was correct, the court stated: "the date of the shooting was the date defendant purposely caused [the victim] to die, under R.C. 2903.01; and, hence, there was no error in the indictment." *Id.* at *21. This court reaches the same conclusion.

{¶18} Assuming, arguendo, we accepted appellant's argument that the indictment contained the wrong date, the failure to provide the correct date and time in the indictment would not, by itself, provide a basis for dismissal of the charges. *State v. McFeely*, 11th Dist. Ashtabula No. 2008-A-0067, 2009-Ohio-1436, ¶29, citing *State v.*

5

*Sellards*, 17 Ohio St.3d 169, 171 (1985). The precise date and time of an offense need not be included in an indictment where the precise date or time is not an essential element of the offense charged. *State v. Gingell*, 7 Ohio App.3d 364 (1982), paragraph two of the syllabus. As such, even if the indictment was incorrect, which it was not, appellant is still not entitled to acquittal under Crim.R. 29.

**{¶19}** Accordingly, appellant's first assignment of error is without merit.

**{¶20}** Appellant's second assignment of error states:

**{¶21}** "The failure of friends to summon medical care for the victim was an independent intervening cause of death and appellant should be acquitted of murder."

**{¶22}** This court dealt with the issue of independent intervening acts in *State v. Dukes*, 11th Dist. Portage No. 2010-P-0027, 2011-Ohio-6849. In *Dukes*, at ¶33, this court stated:

> 'It is a fundamental principle that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.' *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978). Accordingly, 'one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved his life.' *Id.* at 40. As the trial court correctly noted, 'medical treatment for homicide victims is not an intervening cause.' *State v. Carter*, 64 Ohio St.3d 218, 226, 1992-Ohio-127. While simple negligence is insufficient to break a causal connection, 'gross negligence or willful maltreatment will relieve the defendant from liability.' *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, at ¶45 * * *.

**{¶23}** The facts in this case show that appellant intended to assault Mr. Attkisson. The state put forth eye witnesses that testified to seeing appellant slam Mr. Attkisson to the ground. As a result of these actions, appellant is presumed "to intend the natural, reasonable and probable consequences of his voluntary acts." *State v. Johnson*, 56 Ohio St.2d 35, 39 (1978).

6

**{¶24}** Mr. Attkisson's failure to "medicate and seek proper treatment is neither abnormal nor unforeseeable." *State v. Smith*, 4th Dist Ross No. 06CA2893, 2007-Ohio-1884, ¶29. In *Smith*, the victim suffered a single punch to the head, after which he stopped medicating himself for his diabetes. Leading up to his death, the victim in *Smith* had extremely elevated sugar levels and necrotic bowels. The *Smith* Court held that because the failure to seek proper medical attention was foreseeable, the chain of legal causation was not broken. *Id.* at ¶29.

**{¶25}** Similar to the events in *Smith*, Mr. Attkisson did not immediately seek medical attention after the assault by appellant. Instead, Mr. Attkisson went to Mr. Walls' house, had a beer, and went home. On August 22, 2012, Mr. Attkisson refused to go to the hospital or seek medical assistance despite being encouraged to do so by multiple individuals. It was not until the following morning that Mr. Attkisson received professional medical care, after his fiancée called 9-1-1 and paramedics transported Mr. Attkisson to the hospital. This delay between the assault and Mr. Attkisson's medical care does not break the chain of legal causation because it is entirely foreseeable that an individual may not immediately seek medical care in this situation.

**{¶26}** We hold there was no independent, intervening cause of death because the delay of time between the assault and Mr. Attkisson's medical care was foreseeable. Appellant's second assignment of error is without merit.

**{¶27}** Appellant's third assignment of error states:

**{¶28}** "The Jury's verdict is against the manifest weight of the evidence and sufficiency of the evidence."

{¶29} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Further, no conviction resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the appeal. *Thompkins* at 386.

{¶30} Appellant maintains that the verdict is against both the weight and sufficiency of the evidence because "all of the evidence presented by the State showed that Mr. Attkisson was alive on that date the indictment alleged the murder occurred." However, the date on the indictment correctly corresponds with the date of the assault on Mr. Attkisson, and the assault caused Mr. Attkisson's death eight days later in the hospital.

{¶31} Furthermore, appellant suggests that the verdict is against the weight of the evidence because the sole eye witness had an obstructed view of the confrontation. Appellant suggests that Mr. Attkisson initiated the contact and that appellant acted in self-defense. However, there was testimony presented to the jury that appellant swung at Mr. Attkisson and then picked Mr. Attkisson up off the ground and slammed him onto the concrete. Witnesses testified as to hearing Mr. Attkisson's head hit the concrete.

8

{¶32} We are mindful that the jury, as the trier of fact, is entitled to believe all, part, or none of a witness's testimony. *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21. Under manifest weight, appellant argues that the testimony of his witness was more credible than that offered by the state. However, it is clear that the jury thought the state's multiple witnesses were more credible than the evidence advanced by appellant's witness, who is also his nephew. We cannot conclude the jury lost its way in returning a verdict of guilty. For these reasons, we hold the jury's verdict was not against the manifest weight of the evidence.

{¶33} When measuring the sufficiency of the evidence, an appellate court must consider whether the state set forth adequate evidence to sustain the jury's verdict as a matter of law. *Kent v. Kinsey*, 11th Dist. No. 2003-P-0056, 2004-Ohio-4699, ¶11, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A verdict is supported by sufficient evidence when, after viewing the evidence most strongly in favor of the prosecution, there is substantial evidence upon which a jury could reasonably conclude that the state proved all elements of the offense beyond a reasonable doubt. *State v. Schaffer*, 127 Ohio App.3d 501, 503 (11th Dist.1998), citing *State v. Schlee*, 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-15 (Dec. 23, 1994).

{¶34} To support appellant's conviction, there must be substantial evidence that proves appellant (1) knowingly acted to cause serious physical harm to another and (2) that this serious physical harm was the proximate cause of Mr. Attkisson's death. The jury heard testimony from witnesses that appellant slammed Mr. Attkisson's head onto the concrete sidewalk. Furthermore, the jury heard testimony about an underlying dispute between appellant and Mr. Attkisson. This evidence, taken as a whole, is

9

sufficient to prove beyond a reasonable doubt that appellant acted knowingly to cause serious physical harm.

{¶35} Furthermore, the jury heard sufficient evidence that the serious physical harm caused by appellant was the proximate cause of Mr. Attkisson's death. The jury heard medical evidence from Mr. Attkisson's trauma surgeon that the cause of Mr. Attkisson's death was the subdural hematoma and multiple intercranial hemorrhages. The state's evidence substantially connected the cause of death to the altercation between appellant and Mr. Attkisson. Taken as a whole, the evidence is sufficient such that the jury could reasonably conclude appellant's assault on Mr. Attkisson was the proximate cause of Mr. Attkisson's death.

{¶36} Because the jury's verdict was not against either the manifest weight of the evidence or the sufficiency of the evidence, appellant's third assignment of error is without merit.

{¶37} Appellant's fourth and final assignment of error states:

{¶38} "The trial court erred when it instructed the jury regarding fleeing the scene as consciousness of guilt."

{¶39} In appellant's final assignment of error, he argues that the trial court improperly instructed the jury regarding appellant fleeing the scene.

{¶40} "'It is well established that flight is admissible as evidence tending to show consciousness of guilt.'" *State v. Meeks*, 11th Dist. Lake No. 2007-L-057, 2007-Ohio-6559, ¶38, quoting *State v. Martin*, 11th Dist. Lake No. 93-L-015, 1995 Ohio App. Lexis 1775, *4 (Apr. 28, 1995). Furthermore, "'it is today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption

10

of a false name, and related conduct are admissible as evidence of consciousness of guilt, and thus guilt itself.'" *Id.* at ¶49, quoting *State v. Love,* 11th Dist. Lake No. 99-L-051, 2001 Ohio App. LEXIS 2147, *11 (May 11, 2001).

{¶41} The trial court judge has broad discretion as to whether to issue an instruction on flight. The decision of whether to issue this instruction will not be reversed absent an abuse of discretion. *Martin*, *supra*, *4-5. An abuse of discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black's Law Dictionary* 11 (8th Ed.2004).

{¶42} The trial court provided the jury with the following instructions concerning consciousness of guilt:

> Testimony has been provided indicating that the defendant fled the scene of the crime. You are instructed that such conduct in and of itself does not raise a presumption of guilt, but it may tend to indicate the defendant's consciousness of guilt. If you find that the facts do not support that the defendant fled the scene, or if you find that some other motive prompted the defendant's conduct, or if you are unable to decide what the defendant's motivation was, then you should not consider this evidence for any purpose. However, if you find that the facts support that the defendant engaged in such conduct and if you decide that the defendant was motivated by a consciousness of guilt, you may consider that evidence in deciding whether the defendant is guilty of the crimes of Murder and/or Felonious Assault. You alone will determine what weight, if any, to give to this evidence.

{¶43} Appellant contends that a flight instruction should not have been given because there was no evidence that appellant fled the scene of the crime. After the confrontation, appellant returned home. Later that day, appellant was located by police. However, multiple eyewitnesses also testified at trial that appellant left the scene at a fast pace. Furthermore, jurors were instructed to not consider appellant's flight as

11

consciousness of guilt if they found "that the facts do not support that the defendant fled the scene, or * * * that some other motive prompted the defendant's conduct."

**{¶44}** The instruction given by the trial court is a correct statement of the law. The jurors were instructed they were free to disregard the testimony regarding flight if they did not believe the evidence supported that contention. Because there was sufficient evidence for the trial court's instruction to the jury on appellant's flight, appellant's fourth assignment of error is without merit.

**{¶45}** For the foregoing reasons, appellant's four assignments of error are not well taken, and the judgment of the Ashtabula County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J.,

COLLEEN MARY O'TOOLE, J.,

concur.