[Cite as *State v. Hampton*, 2016-Ohio-5321.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 103373

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CARL HAMPTON

DEFENDANT-APPELLANT

### JUDGMENT:
### REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-14-581840-A and CR-14-582137-B

**BEFORE:** Celebrezze, J., Blackmon, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 11, 2016

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender
BY:    Noelle A. Powell
       Jeffrey Gamso
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY:    Andrew J. Santoli
       John Patrick Colan
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

FRANK D. CELEBREZZE, JR., J.:

{¶1} Appellant, Carl Hampton, appeals from his conviction for murder, felonious assault, involuntary manslaughter, and assault. He claims that his murder and felonious assault convictions are unsupported by sufficient evidence, the weight of the evidence is in favor of acquittal, the state improperly excused a juror on account of race or gender, trial counsel was constitutionally ineffective, the court improperly imposed a fine, and the state abused its discretion when making its selection regarding allied offenses. After a thorough review of the record and law, this court reverses and remands for a new trial.

## I. Factual and Procedural History

{¶2} In the early morning hours of December 30, 2013, appellant and his girlfriend, Monica McGarver, were at Tino's bar in South Euclid, Ohio. Eugene Warner was also at the bar. Warner had once advised McGarver to be careful dating appellant, and she told appellant of that conversation. On this night, appellant decided to respond to those comments. Appellant was arguing with Warner at the back of the bar and suddenly punched Warner once, causing Warner to fall to the ground. As quickly as the fight started, it was over. Warner left the bar with his girlfriend and went home. The next day Warner began to experience vomiting, nausea, and headaches that may have been due, in part, to food poisoning.

{¶3} Warner continued experiencing headaches and vomiting and on January 2, 2014, he went to an urgent care facility. He was examined, given two shots, and sent

home. Later that night, Warner became unresponsive and his girlfriend called for emergency services. Warner was taken to the hospital and emergency surgery was performed to treat a subdural hematoma. The bleeding in Warner's brain eventually led to his death.

{¶4} Appellant was indicted on January 27, 2014, and charged with murder, a violation of R.C. 2903.02(B); felonious assault, a violation of R.C. 2903.11(A)(1); involuntary manslaughter, a violation of R.C. 2903.04(B); and assault, a violation of R.C. 2903.13(A). The case proceeded to a jury trial, which commenced on March 16, 2015. At its conclusion, the jury was deadlocked as to the murder and felonious assault charges. After the court gave further jury instructions, the jury was able to reach a unanimous verdict, finding appellant guilty of all charges. On June 29, 2015, the trial court determined that all the offenses merged and the state elected to have appellant sentenced on the murder charge. Appellant was sentenced to a prison term of 15 years to life.

{¶5} Appellant then filed the instant appeal assigning six errors and one supplemental error for review:

> I. The trial court erred in denying [appellant's] motion to dismiss because the evidence against him is insufficient to support convictions for felonious assault, murder, and involuntary manslaughter.
>
> II. The guilty verdicts for murder, involuntary manslaughter, and felonious assault were against the manifest weight of the evidence.
> III. [Appellant] was denied his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments as established in *Batson v. Kentucky* along with his rights to due process and equal protection.
>
> IV. [Appellant] was denied effective assistance of counsel when his attorney failed to object to inadmissible and highly prejudicial testimony.

V. The fine, which appears on the sentencing journal entry, was not imposed by the trial court during sentencing and the trial court did not assess [appellant's] present and future ability to pay, accordingly, the sentence should be vacated.

VI. The state abused its prosecutorial discretion by electing to sentence [appellant] on the murder count, thus not serving the interests of justice and causing unnecessary costs to the state of Ohio.

VII. [Appellant] was denied his Sixth Amendment right to effective assistance of counsel when trial counsel failed to call the defense expert.

{¶6} Because the resolution of the third assignment of error renders the second, fourth, fifth, sixth, and seventh assignments of error moot, only the first and third assignments of error will be addressed.

## II. Law and Analysis

### A. Sufficiency

{¶7} In appellant's first assignment of error, he attacks the validity of his murder and felonious assault convictions, and his involuntary manslaughter and assault convictions claiming they are unsupported by sufficient evidence. This is a claim that the evidence adduced by the state was insufficient as a matter of law. When reviewing a sufficiency claim "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 70-71, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus; *State v. Thompkins,* 78

Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

**{¶8}** Appellant was found guilty of violating R.C. 2903.02(B), murder. This statute provides, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." Appellant was also found guilty of felonious assault, which was used to support the murder conviction. Felonious assault is a first- or second-degree felony depending on the facts surrounding the offense. R.C. 2903.11(D). R.C. 2903.11(A)(1) defines felonious assault in this case and states, "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * * ."

**{¶9}** Involuntary manslaughter, as defined in R.C. 2903.04(B), punishes similar activity to the above murder statute, but applies when the underlying offense is a misdemeanor:

No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV of the Revised Code that is a minor

misdemeanor.

{¶10} Assault, defined in R.C. 2903.13(A), is the underlying misdemeanor charged here. That statute prohibits one from knowingly causing or attempting to cause physical harm to another. *Id*. The evidence that appellant intended to assault Warner is not in dispute. Several eyewitnesses testified that appellant punched Warner in the face. Surveillance video from inside Tino's Bar also captured appellant punching Warner.

{¶11} The soundness of appellant's murder conviction rests primarily on whether appellant committed felonious assault. Next, there must be sufficient, reliable evidence that the felonious assault caused Warner's death. For the murder conviction, the issue is whether appellant knowingly caused serious physical harm.

{¶12} Serious physical harm means:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

{¶13} Knowingly is the proper means rea for felonious assault. *State v. Fry*, 125 Ohio St.3d 163, 2010-Ohio-1017, 926 N.E.2d 1239, ¶ 45. "'It is a fundamental principle

that a person is presumed to intend the natural, reasonable and probable consequences of his voluntary acts.'" *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996, ¶ 143, quoting *State v. Johnson*, 56 Ohio St.2d 35, 39, 381 N.E.2d 637 (1978). "To be actionable it is only necessary that the result is within the natural and logical scope of risk created by the conduct." *State v. Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, ¶ 29, citing *State v. Losey*, 23 Ohio App.3d 93, 96-97, 491 N.E.2d 379 (10th Dist.1985). A person need not foresee the precise consequences of criminal conduct. *Id.* at ¶ 29.

{¶14} Therefore, this court must determine whether a single punch, thrown by a person with no specialized training, at an individual roughly the same size that resulted in death due to bleeding in the brain that would have healed normally if not for the fact that the victim was on anticoagulation medication, constitutes knowingly causing serious physical harm.

{¶15} The Ninth District addressed the question of whether two punches to the head of a victim constituted knowingly causing serious physical harm sufficient to constitute felonious assault. *State v. Murphy*, 9th Dist. Summit No. 24753, 2010-Ohio-1038. The assault in that case consisted of two punches to the head of the victim that caused a fractured skull and subdural hematoma. *Id.* at ¶ 5. The neurosurgeon that treated the victim testified as to the great amount of force required to cause a skull fracture. *Id.* at ¶ 19.

{¶16} In contrast, Dr. Cheryl Niblo, the assistant medical examiner who performed

the autopsy on Warner, testified that the subdural hematoma was likely caused by a light to moderate amount of force. Warner's treating neurosurgeon, Dr. Charles Munyon, testified that a moderate amount of force likely caused Warner's subdural hematoma.

{¶17} The neurosurgeon in *Murphy* also testified that the location of the strike on the victim's head was important. The victim was stuck in the temple, an area that is particularly susceptible to serious injury when struck. *Id.* Here, the only testimony was that appellant punched Warner in the jaw. Warner complained only of a sore jaw after being struck. McGarver testified that appellant punched Warner once in the jaw with his left hand when appellant was right-handed. So there are relevant differences between the two cases.

{¶18} In *State v. Thomas*, 10th Dist. Franklin No. 02AP-778, 2003-Ohio-2199, the Tenth District found sufficient evidence for felonious assault and murder where a motorist, following a car accident, punched a victim in the head and kicked the victim twice in the head after the victim fell to the ground. *Id.* at ¶ 76-79. The victim suffered multiple skull fractures and died from a cerebral herniation. *Id.*

{¶19} The Ninth District also upheld a felonious assault conviction where a defendant punched another once in the jaw. *State v. Westfall*, 9th Dist. Lorain No. 10CA009825, 2011-Ohio-5011, ¶ 10. The single blow fractured the victim's jaw and knocked out two teeth. *Id.* at ¶ 2.

{¶20} The Third District has held that intentionally punching "'someone in the face satisfies the requisite culpable mental state for felonious assault.'" *State v. Redman*,

3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 22, quoting *State v. Beaver*, 3d Dist. Union No. 14-13-15, 2014-Ohio-4995, ¶ 37. This holding means the differences highlighted above are meaningless. When one intentionally punches another in the face, that assailant intends the natural consequences that follow, including causing serious physical harm.

{¶21} These cases tend to support the proposition that one or two punches, aimed at the head of a victim, constitute knowingly causing the serious physical harm that results. However, the two cases outlined below are more factually similar and support the state's position that appellant's actions in this case constitute knowingly causing serious physical harm.

{¶22} The Fourth District faced a case where a defendant was convicted of involuntary manslaughter and felonious assault. *State v. Vanover*, 4th Dist. Lawrence No. 98CA38, 1999 Ohio App. LEXIS 2357 (May 16, 1999). There, the defendant got into an argument with a friend and punched him in the face. The victim fell backward and hit his head. He later died from a subdural hematoma. That court upheld the felonious assault conviction in the face of similar arguments to those appellant now advances. *Id*. at 9-15.

{¶23} Similarly, the Eleventh District found that a defendant's conviction for murder based on felonious assault was supported by sufficient evidence where the death resulted from the defendant slamming the victim's head against the ground a single time. *State v. Champlin*, 11th Dist. Ashtabula No. 2013-A-0021, 2014-Ohio-1345, ¶ 29-36.

**{¶24}** These cases do not involve the same scenario where the victim had particularized medical issues that exacerbated or contributed to the condition that caused death, but generally evidence that a single blow to the head may satisfy the criminal elements of felonious assault. However, the Fourth District has confronted just such a case. *Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884.

**{¶25}** In *Smith*, the Fourth District found a single punch to the head that resulted in a person's death from medical issues particular to the victim, was not an intervening cause, and the death that resulted was the proximate result of the single punch. In that case, the victim was punched in the head by Smith and fell to the ground, striking his head. Unbeknownst to the victim, he had suffered damage to the frontal lobe of his brain. As a result, he stopped taking his diabetes medication and later died. The medical examiner that performed the autopsy on the victim testified that the frontal lobe damage likely caused the victim to stop taking his medication and ultimately lead to the victim's death as a result of untreated diabetes. This case is strikingly similar to the present one where a single punch to the face caused a cascade of events that lead to a person's death.

**{¶26}** Appellant does not address this case in his arguments, but does cite to *State v. McFadden*, 10th Dist. Franklin No. 95APA03-384, 1995 Ohio App. LEXIS 5144 (Nov. 21, 1995). There, the Tenth District found that a single punch that caused the death of the victim constituted reckless conduct rather than knowing conduct:

This court has carefully reviewed the transcript in the present case and has

determined that the evidence presented simply does not support the conclusion that appellant "knowingly" caused serious physical harm to [the victim]. Appellant threw one punch at [the victim] and then walked away. Appellant and [the victim] were men of similar size and body weight. Appellant, although physically fit, did not have any boxing or fighting experience. Under the circumstances, this court finds it difficult to accept that a reasonably prudent person would have been aware that the throwing of one punch had the propensity to cause serious physical harm to another person. Instead, it is reasonable to assume that a person would expect one punch to cause physical harm to another person. Unfortunately, in the present case, appellant's one punch struck [the victim] in such a manner that it caused his death. Certainly one could expect that a blind-side punch to someone's head has a greater chance of causing injury to the person struck than when someone engages another person in a fight head on. As such, this court finds that appellant acted recklessly when he avoided the known risk of causing serious physical harm to [the victim] by striking him in the head blind sided.

*Id*. at 11-12. This case stands in stark contrast to the above cases and has only been cited approvingly once, but in a different context. *See State v. McCleod*, 7th Dist. Jefferson No. 00 JE 8, 2001-Ohio-3480. The majority of case law this court reviewed supports the proposition that appellant's actions in this case constitute knowingly causing serious

physical harm.

{¶27} Appellant certainly meant to strike Warner in the face. It is clear from the witness testimony and the video footage that Warner was stuck in the head and fell to the ground. Some witnesses testified that Warner did not hit his head and others testified he did or may have hit his head on the door or floor. In any event, the treating neurologist testified that Warner's condition could have been caused without Warner striking his head on the ground, but by the sudden acceleration of being punched and falling to the ground and the sudden deceleration when his body hit the ground. The fact that anticoagulation medication most certainly contributed to Warner's death does not provide sufficient intervention to break the causal chain between appellant's criminal act and Warner's death. *Smith* is directly on point for this proposition. *Id*., 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884.

{¶28} Based on a review of the case law and applying it to the facts of this case, appellant knowingly caused serious physical harm by suddenly and without provocation punching Warner in the face. The state did not have to prove that defendant intended to cause Warner's death, only that appellant knowingly caused serious physical harm. *State v. Irwin*, 4th Dist. Hocking Nos. 03CA13 and 03CA14, 2004-Ohio-1129, ¶ 18.

{¶29} Next, appellant argues that there is insufficient evidence that his single punch to the victim's head caused the subdural hematoma.

{¶30} Dr. Munyon, Warner's treating physician, testified that a moderate amount of force was required to trigger the bleeding in Warner's brain. He testified that an event

of that force would be memorable. In the days leading up to his incapacitation, Warner did not complain to anyone of any such event other than being punched by appellant. Dr. Munyon also stated that the bleeding in Warner's brain occurred sometime within ten days of surgery. Dr. Niblo was able to narrow that range down to within seven days of death. According to the testimony of Warner's girlfriend, Leslie Crawford, Warner did not complain of headaches until January 1, 2015. Warner and Crawford likely got food poisoning on that day from eating leftovers. Both experienced nausea, vomiting, and diarrhea. Crawford felt better the next day, but Warner was still vomiting and complaining of headaches.

{¶31} Crawford was with Warner on December 29 and 30, but was not with him the two days prior to that. No one else testified about Warner's activities in the few days leading up to December 30 either. Appellant uses this to argue that the state failed to establish, beyond a reasonable doubt, that the punch caused Warner's subdural hematoma. However, Warner complained of no other event when discussing his physical condition, such as headaches. The only information anyone had about an event that could cause Warner's condition was when appellant punched him. Viewing this evidence in a light most favorable to the state, there is sufficient evidence that appellant was the cause of the injuries that lead to Warner's death. This means that appellant's convictions for murder, involuntary manslaughter, felonious assault, and assault are supported by sufficient evidence.

{¶32} Therefore, appellant's first assignment of error is overruled.

## B. Improper Removal of a Juror

**{¶33}** Appellant next argues that the state impermissibly removed a juror without giving a race- or gender-neutral reason for the removal.

**{¶34}** The United States Supreme Court set a limit on the discretion exercised by the prosecution in its use of peremptory challenges for the selection of a jury:

> Although a prosecutor ordinarily is entitled to exercise peremptory challenges for any reason, as long as that reason is related to his view concerning the outcome of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

*Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), paragraph 1(b) of the syllabus. Gender is also an improper consideration for the exercise of a peremptory challenge. *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). Further, the "'"Constitution forbids striking even a single prospective juror for a discriminatory purpose."'" *Foster v. Chatman*, 578 U.S.___, 136 S.Ct. 1737, 195 L.Ed.2d 1 (2016), quoting *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008), quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir.1994).

**{¶35}** The court, in *Batson*, developed a three-part test:

> First, a defendant must make a prima facie case that the prosecutor is

engaged in racial discrimination. *Id*. at 96-97. Second, if the defendant satisfies that burden, the prosecutor must provide a racially neutral explanation for the challenge. *Id*. at 97-98. Finally, the court must decide, based on all the circumstances, whether the defendant has proved purposeful racial discrimination. *Id*. at 98. In doing so, the court must consider the circumstances of the challenge and assess the plausibility of the prosecutor's explanation in order to determine whether it is merely pretextual.

*State v. Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, ¶ 21, citing *Miller-El v. Cockrell*, 537 U.S. 322, 339, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 65. This court "defer[s] to a trial court's resolution of a *Batson* challenge absent a showing of clear error." *Johnson* at ¶ 23, citing *State v. Thompson*, 141 Ohio St.3d 254, 2014-Ohio-4751, 23 N.E.3d 1096, ¶ 53.

{¶36} In the present case, the state used its first peremptory challenge to remove a Hispanic female. It then sought to excuse a white female, a white male, and an African-American female. The court then sua sponte raised the *Batson* issue stating that a pattern had emerged where the state was excusing jurors based on race or gender. The trial court may have dispensed with the first step of the *Batson* analysis by sua sponte raising the issue, but appellant objected and argued a pattern emerged based on race and gender. While the objection was no more descriptive than that, the state was required to

offer its race- and gender-neutral reasons for the exercise of its challenges once the court found a pattern existed.

{¶37} The state gave race- and gender-neutral reasons for the removal of the first, second, and third potential jurors, but failed to give a reason why it wished to excuse the potential African-American female juror. Instead, it explained that this juror would be replaced by another African-American female juror, so there could be no race- or gender-based reason for removal.

{¶38} This court cannot review the state's reason for striking the African-American female juror because none was offered. The explanation offered by the state at trial is insufficient because it does not constitute a reason for the potential juror's removal, but merely addresses harm or prejudice to the defendant.

> Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or "[affirming] [his] good faith in making individual selections." *Alexander v. Louisiana*, [405 U.S. 625, 632, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972)]. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause "would be but a vain and illusory requirement." *Norris v. Alabama*, [294 U.S. 587, 598, 55 S.Ct. 579, 79 L.Ed. 1074 (1935)]. The prosecutor therefore must articulate a neutral explanation related to the particular case to be tried. The trial court then will have the duty to determine if the defendant has established purposeful discrimination.

*Batson*, 476 U.S. at 98, 106 S.Ct. 1712, 90 L.Ed.2d 69. Simply put, this court cannot discern why the state chose to excuse this potential juror and neither could the trial court.

**{¶39}** Further, "'[t]he striking of a single black [or female] juror for racial [or gender] reasons violates the equal protection clause, even though other black [or female] jurors are seated, and even when there are valid reasons for the striking of some black [or female] jurors.'" *United States v. Harris*, 192 F.3d 580, 587 (6th Cir.1999), quoting *United States v. Battle*, 836 F.2d 1084, 1086 (8th Cir.1987); *Johnson*, 144 Ohio St.3d 518, 2015-Ohio-4903, 45 N.E.3d 208, at ¶ 20.

**{¶40}** The state's argument that there can be no prejudice because the juror was replaced by another African-American female juror is misplaced here because the improper use of a peremptory challenge is not subject to a prejudice analysis. Improper use of a peremptory challenge is a matter of structural error, which does not include such an analysis. *Harris* at 588, citing *Arizona v. Fulminante*, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

**{¶41}** The Eighth Circuit remanded a case for a hearing when the prosecution failed to articulate reasons for its peremptory strikes in excusing four African-American jurors. *Battle* at 1086. This case is analogous to the present situation and would be beneficial to resolving the issue. It would allow the state to present its reasons for removing this prospective juror and allow the trial court to engage in the appropriate analysis. However, this court cannot find any authority for a remand for the state to add to the record that which does not exist. The *Battle* court did not cite to any source of

authority for its remand order. This court may remand a case for correction of the record according to App.R. 9(E), but that does not apply to this situation.[1] App.R. 12 does not give this court the authority to do anything other than resolve the matter on the record currently before us.

{¶42} Given that the state did not offer a race- and gender-neutral reason regarding this potential juror, this court must declare that the trial court erred in its *Batson* analysis. The trial court found a pattern existed, but determined that the state's use of peremptory challenges were based on race- and gender-neutral reasons. This was clearly erroneous as to the African-American female potential juror because the state failed to offer a reason for the exercise of its peremptory challenge for this potential juror. This amounts to a structural error. The state's argument that this juror was replaced by another African-American female is not a sufficient justification. Appellant's convictions must be reversed and the case remanded for a new trial. This renders appellant's remaining assignments of error moot.

### III. Conclusion

{¶43} Appellant's convictions for murder, involuntary manslaughter, felonious

---

[1] "If any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by the trial court and the record made to conform to the truth. If anything material to either party is omitted from the record by error or accident or is misstated, the parties by stipulation, or the trial court, either before or after the record is transmitted to the court of appeals, or the court of appeals, on proper suggestion or of its own initiative, may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted. All other questions as to the form and content of the record shall be presented to the court of

assault, and assault are supported by sufficient evidence. However, the state never gave a reason for the use of one of its peremptory challenges used to remove a potential juror and how its use was nondiscriminatory. Therefore, the court erred in its *Batson* analysis and appellant's convictions must be reversed and the case remanded for a new trial.

{¶44} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

FRANK D. CELEBREZZE, JR., JUDGE

PATRICIA ANN BLACKMON, P.J., and
ANITA LASTER MAYS, J., CONCUR

---

appeals."