[Cite as *State v. Russell*, 2021-Ohio-871.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO                            :
                                         :
    Plaintiff-Appellee              :    Appellate Case No. 24443
                                         :
v.                                       :    Trial Court Case No. 2004-CR-3840/2
                                         :
JAMES A. RUSSELL                         :    (Criminal Appeal from
                                         :    Common Pleas Court)
    Defendant-Appellant             :
                                         :

. . . . . . . . . . .

# O P I N I O N

Rendered on the 19th day of March, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

BENJAMIN C. GLASSMAN, Atty. Reg. No. 0077466 and G. LUKE BURTON, Atty. Reg. No. 0098146, 201 East Fourth Street, Suite 1900, Cincinnati, Ohio 45202
    Attorneys for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Defendant-appellant, James A. Russell, has been granted permission by this court to pursue a reopened appeal on an ineffective assistance of appellate counsel claim predicated on his former appellate counsel's failure to raise the following assignment of error identified in federal habeas corpus proceedings: whether Russell's convictions for murder and aggravated robbery should have merged under R.C. 2941.25. We hold that Russell's argument has merit. Therefore, the trial court's judgment entry of conviction is reversed only on the narrow issue on which the appeal was reopened, and we remand for resentencing only.

## I. Facts and Procedural History

**{¶ 2}** In 2004, Russell lived with Candace Hargrove in an apartment in Dayton. Appellee's Brief 3; *see* Appellant's Brief 5. He and Hargrove already had one child, and Hargrove was carrying their second child at the time. Appellee's Brief 3; *see* Appellant's Brief 5. Later that year, Hargrove began engaging in prostitution to support herself and Russell. Appellee's Brief 3; *see* Appellant's Brief 5.

**{¶ 3}** Early in August 2004, Hargrove arranged to meet a client at the apartment, having done so previously with Russell's knowledge. Appellee's Brief 4; *see* Appellant's Brief 5. Hargrove, however, felt disinclined to proceed as her client expected, so instead, she and Russell contrived to rob the client. Appellee's Brief 4; *see* Appellant's Brief 5. Accordingly, Russell hid himself behind a door, and when Hargrove admitted her client into the apartment, Russell emerged from behind the door, drew a gun and demanded the client's wallet. Appellee's Brief 4; *see* Appellant's Brief 5. The client complied with Russell's demand and departed, more or less unscathed. Appellee's Brief 4; *see* Appellant's Brief 5.

{¶ 4} On September 1, 2004, Hargrove had arranged a meeting at the apartment with a new client who identified himself as "Dave"; in reality, "Dave" was Phillip Troutwine. Appellee's Brief 4; *see* Appellant's Brief 5-6. Because Hargrove again felt averse to a conventional encounter, she and Russell decided essentially on a repetition of the robbery that had succeeded the month before. Appellee's Brief 4; *see* Appellant's Brief 5. They planned for Hargrove to lead Troutwine to the apartment's back entrance, where Russell would surprise him. Appellee's Brief 4; *see* Appellant's Brief 5-6.

{¶ 5} When Troutwine arrived, he asked Hargrove to show him the apartment. Hargrove, in compliance, began escorting him through the premises, but as they entered the bedroom, Russell sprang the trap sooner than Hargrove had expected. Appellee's Brief 4-5; *see* Appellant's Brief 5. Rushing at Troutwine with a gun, Russell pressed his free hand against Troutwine's chest, aimed the gun at Troutwine's head and demanded Troutwine's money. Appellee's Brief 5; Appellant's Brief 5-6.

{¶ 6} Startled by Russell's departure from the plan for the robbery, Hargrove ran from the bedroom into the living room. Appellee's Brief 5; Appellant's Brief 6. She heard the sounds of a struggle and a single gunshot, at which point Russell ran into the room shouting, "Oh, my god, * * * I didn't mean to shoot him." Appellee's Brief 5; Appellant's Brief 6. The shot had killed Troutwine. Appellant's Brief 6; *see* Appellee's Brief 5.

{¶ 7} Russell wrapped the body in a tent and placed it in the trunk of Troutwine's car. Appellee's Brief 5. After cleaning the apartment and disposing of his and Hargrove's clothes, Russell drove Troutwine's car to an apartment complex near the Dayton Mall. *Id.* at 5-6. Three weeks later, police officers found the car there and

recovered Troutwine's body. *Id.* at 6.

{¶ 8} On December 10, 2004, a Montgomery County grand jury indicted Russell as follows: Count 1, aggravated robbery, a first-degree felony in violation of R.C. 2911.01(A)(1); Count 2, felony murder, an unclassified felony in violation of R.C. 2903.02(B); Count 3, tampering with evidence, a third-degree felony in violation of R.C. 2921.12(A)(1); Count 4, grand theft, a fourth-degree felony in violation of R.C. 2913.02(A)(1); Count 5, abuse of a corpse, a fifth-degree felony in violation of R.C. 2927.01(B); and Count 6, having a weapon while under disability, a third-degree felony in violation of 2923.13(A)(2). Counts 1, 2 and 4 were each accompanied by a firearm specification pursuant to R.C. 2941.145(A).

{¶ 9} Count 6 was tried to the bench, and on January 13, 2006, the trial court found Russell guilty. On December 30, 2005, a jury found Russell guilty on Counts 1 through 5, although this court later reversed the convictions and remanded the case for a new trial, because a "a blank verdict form for Count [6], [h]aving a [w]eapon [w]hile under * * * [d]isability, [had been] mistakenly provided to the jury." *State v. Russell*, 2d Dist. Montgomery No. 21458, 2008-Ohio-774, ¶ 20, 83 and 135.

{¶ 10} After remand, the case proceeded to a second jury trial on Counts 1-5, and on May 4, 2009, the jury found Russell guilty on all counts. The trial court sentenced Russell to serve 10 years in prison on Count 1; 15 years to life on Count 2; five years on Count 3; 18 months on Count 4; one year on Count 5; five years on Count 6; and three years for the firearm specifications, which were merged, for an aggregate sentence of 40 and one-half years to life. Russell again appealed, and we reversed the result of the second trial and remanded the case, holding that the trial court had erroneously declined

to consider a *Batson* challenge to the State's peremptory removal of a prospective juror.[1] *State v. Russell*, 2d Dist. Montgomery No. 23454, 2010-Ohio-4765, ¶ 5, 22 and 24. Among other things, Russell also argued that his convictions for aggravated robbery and felony murder should have been merged, but we held that the two crimes were not allied offenses in reliance on the Ohio Supreme Court's opinion in *State v. Rance*, 85 Ohio St.3d 632, 635, 710 N.E.2d 699 (1999). *Id.* at ¶ 33, 35 and 40. Our opinion directed the trial court to hold a *Batson* hearing on remand. *Id.* at ¶ 24.

**{¶ 11}** As directed, the trial court held a *Batson* hearing and found that Russell had failed to establish a prima facie case for racial discrimination in the State's exercise of its peremptory challenge. Entry and Order 1, Dec. 22, 2010. Russell filed a notice of appeal on January 21, 2011, arguing that the trial court thereby erred, and in our opinion of February 3, 2012, we reversed the trial court's decision and remanded the case for another *Batson* hearing. *State v. Russell*, 2d Dist. Montgomery No. 24443, 2012-Ohio-422, ¶ 3. Following the second *Batson* hearing, the trial court found that Russell had not met his burden of proving purposeful discrimination, and it reinstated the convictions entered by the trial court at the conclusion of Russell's second jury trial in 2009. Russell commenced another appeal, but we affirmed the judgment of the trial court. *State v. Russell*, 2d Dist. Montgomery No. 25467, 2013-Ohio-5166, ¶ 1.

**{¶ 12}** In September 2015, Russell filed a petition for habeas corpus, raising

---

[1] A *Batson* challenge is an objection by which a party contests the validity of the other party's use of a peremptory challenge during jury selection, on the grounds that the peremptory challenge was used to exclude a prospective juror based solely on race or gender in violation of the Equal Protection Clause. *See, e.g.*, *Batson v. Kentucky*, 476 U.S. 79, 88-89, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *State v. Hampton*, 8th Dist. Cuyahoga No. 103373, 2016-Ohio-5321, ¶ 33-36.

several grounds for relief, in the United States District Court for the Southern District of Ohio, Western Division. The district court dismissed the petition with prejudice, though it granted a certificate of appealability for purposes of a *Batson* claim. *Russell v. Marion Corr. Inst.*, S.D. Ohio No. 3:15-cv-331, 2016 WL 4440323 (Aug. 23, 2016). Russell then appealed to the United States Court of Appeals for the Sixth Circuit, which expanded the certificate of appealability to include the question of whether Russell's counsel had been ineffective in his appeal to this court in Montgomery C.P. No. 24443 for failing to raise the argument that the convictions for aggravated robbery and felony murder should have been merged pursuant to the Ohio Supreme Court's opinion in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061. *Russell v. Bunting*, 722 Fed.Appx. 539, 551 (6th Cir.2018).

{¶ 13} The Sixth Circuit remanded the case to the district court, and the district court found a reasonable probability that this court would determine that Russell's convictions for aggravated robbery and felony murder should have been merged. As a result, the district court granted Russell a writ of habeas corpus.

{¶ 14} On June 30, 2020, the State moved under App.R. 5(B) to reopen Case No. 24443, and we sustained the motion in our order of September 2, 2020. With briefing and oral arguments being complete, we may now render our opinion.

## II. Analysis

{¶ 15} For his single assignment of error, Russell contends that:

THE TRIAL COURT ERRED IN FAILING TO MERGE DEFENDANT-APPELLANT JAMES RUSSELL'S AGGRAVATED ROBBERY AND FELONY MURDER CONVICTIONS AS ALLIED OFFENSES FOR

PURPOSES OF SENTENCING.

{¶ 16} Russell argues that the trial court should have merged his convictions for aggravated robbery and felony murder, because in this case the two crimes qualified as allied offenses under R.C. 2941.25(A). Appellant's Brief 7-10. The State argues in response that the two offenses should not have merged because Russell used excessive force to accomplish the robbery, and because the two offenses were committed separately. Appellee's Brief 8-9.

{¶ 17} According to R.C. 2941.25(A), "[w]here the same conduct by [a] defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one" of them.[2] To determine "whether offenses are allied offenses * * * within the meaning of R.C. 2941.25, courts must evaluate three * * * factors—the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus. Offenses, under this standard, should be merged unless "any of the following [statements] is true[:] (1) the offenses are dissimilar in import or significance—[or] in other words, each [of the] offense[s] caused separate, identifiable harm[;] (2) the offenses were committed separately[;] or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25; *see also State v. McGail*, 2015-Ohio-5384, 55 N.E.3d 513, ¶ 50 (2d Dist.), citing *Ruff* at ¶ 25.

{¶ 18} Arguing that his convictions for aggravated robbery and felony murder

---

[2] As the term is used in the Ohio Revised Code, " 'a "conviction" consists of a guilty verdict <u>and</u> the imposition of a sentence or penalty.' " (Emphasis sic.) *See State v. Ulrich*, 2d Dist. Montgomery No. 23737, 2011-Ohio-758, ¶ 40, quoting *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, ¶ 12.

should have been merged, Russell posits, first, that he did not commit the two offenses separately, given that he committed them by means of the same conduct, that is, by using a firearm in committing or attempting to commit a theft offense. Appellant's Brief 7. Second, he maintains that he "committed the two offenses with the same animus," because Troutwine died as the result of "an accidental gun shot" in the midst of the struggle that ensued during the robbery, and third, he characterizes the two offenses as offenses "of similar import because both [of them] involved the death of [one] victim in a sing[le]" incident. *Id.* at 8-9.

{¶ 19} In opposition, the State argues that Russell did commit the two offenses separately "because the aggravated robbery was complete before [he fired his gun] and shot Troutwine." Appellee's Brief 9. As well, the State argues that the offenses should not have been merged because Russell used excessive force to accomplish the robbery. *Id.* at 8-9; *see e.g.*, *State v. Wood*, 2d Dist. Montgomery No. 26134, 2016-Ohio-143, ¶ 57-59 (noting that the use of excessive force can suggest separate animus).

{¶ 20} Relying on the provisions of R.C. 2903.02(B) and 2911.01(A)(1), this court has held previously that a defendant can "commit aggravated robbery and [felony] murder with the same conduct," inasmuch as "a victim could die from the use of a deadly weapon in the course of an aggravated robbery, resulting in the victim's murder." *McGail*, 2015-Ohio-5384, 5 N.E.3d 513, at ¶ 54. We find no reason in the instant case to depart from our holding in *McGail*; Troutwine died in the course of a single, continuous sequence of events that culminated in the commission of aggravated robbery and felony murder, with the offenses occurring essentially at the same time. In the absence of any evidence that Troutwine had been deprived of property before being shot, the State lacks factual

support for its argument that the aggravated robbery was complete at the moment Russell's gun discharged, but even assuming that the aggravated robbery was complete, Troutwine was nevertheless murdered in the course of the robbery. Consequently, we hold that Russell did not commit the offenses of aggravated robbery and felony murder separately.

{¶ 21} We hold further that the two offenses were of similar import or significance. The evidence indicates that Troutwine died before Russell was able to deprive him of his property. *See* Appellee's Brief 5-6 and 11, fn.3. Being deceased, Troutwine was not harmed for any practical purpose by the loss of his property, and arguably, Russell's theft of Troutwine's property could, at that point, have harmed only Troutwine's estate. Moreover, the "examin[ation] [of] a defendant's conduct" for purposes of a merger analysis is "an inherently subjective determination," and on the facts of this case, we find that the sole relevant harm suffered by Troutwine was the loss of his life. *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 32.

{¶ 22} Finally, we hold that Russell did not commit the offenses of aggravated robbery and felony murder with "separate animus" or motivation within the meaning of R.C. 2941.25(B). The State did not prove at trial that Russell acted with a separate intent to kill Troutwine, given that proof of such intent was unnecessary to obtain a conviction for murder under R.C. 2903.02(B), and the record is long since closed. As it stands, the record establishes that Russell killed Troutwine accidentally, rather than purposefully, and because Russell's gun discharged during the struggle between Russell and Troutwine, we find that Russell's use of force was not "far in excess of what was necessary to accomplish the robbery." *See McGail* at ¶ 57. Russell's assignment of error is

sustained.

### III. Conclusion

{¶ 23} We find that the trial court erred in its judgment of December 22, 2010, by failing to merge Russell's convictions for aggravated robbery and felony murder and that appellate counsel was ineffective in failing to raise this issue in prior proceedings. Therefore, the trial court's judgment is reversed only on the narrow issue on which the appeal was reopened and remanded for resentencing consistent with this opinion.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Benjamin C. Glassman
G. Luke Burton
Hon. Dennis J. Adkins