[Cite as *State v. Westfall*, 2011-Ohio-5011.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

CHRISTIAN JAMES WESTFALL

    Appellant

C.A. No.    10CA009825

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    09CR078884

DECISION AND JOURNAL ENTRY

Dated: September 30, 2011

BELFANCE, Presiding Judge.

{¶1} Appellant, Christian Westfall, appeals his conviction from the Lorain County Court of Common Pleas. This Court affirms.

I.

{¶2} On the evening of May 11, 2008, Mr. Westfall was playing basketball with friends at the Homewood School in Lorain. Jeremy Gunter, the victim, arrived at the court with three acquaintances just prior to midnight. Mr. Westfall and one of his friends stopped playing basketball and approached the four that had just arrived. Mr. Westfall recognized Mr. Gunter and began to confront him. Mr. Gunter indicated to police that Mr. Westfall had confronted him about money and was rifling through his pockets looking for money. At some point during the confrontation, Mr. Westfall struck Mr. Gunter on the left side of his face. Mr. Gunter was driven home. When he arrived, his aunt called an ambulance, and he was taken first to Elyria Memorial

Hospital and then to Metro Health Medical Center. Due to the blow from Mr. Westfall, Mr. Gunter suffered a fractured jaw and lost two teeth.

{¶3} In July 2009, Mr. Westfall was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(3), a first-degree felony, and one count of felonious assault in violation of R.C. 2903.11(A)(1), a second-degree felony. Mr. Westfall waived his right to a jury trial, and the matter proceeded to a bench trial in November 2009. The State orally dismissed the aggravated burglary charge against Mr. Westfall and proceeded solely on the felonious assault charge. At the conclusion of the State's evidence, Mr. Westfall made a Crim.R. 29 motion to acquit. The trial court denied the motion. Mr. Westfall renewed his Crim.R. 29 motion at the end of his own case and again at the sentencing hearing. The trial court denied both motions. The judge rendered a verdict of guilty. The court subsequently imposed a sentence of three years probation, a $250 fine, and $2,772 in restitution to be paid to Mr. Gunter.

{¶4} Mr. Westfall now appeals, presenting two assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

"APPELLANT'S RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED AND HE WAS IMPROPERLY DENIED A CRIM.R. 29 ACQUITTAL WHEN THE CONVICTION WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE."

{¶5} Mr. Westfall asserts in his first assignment of error that the trial court erred in denying his Crim.R. 29 motion because the State failed to prove the elements of felonious assault. Thus, Mr. Westfall challenges the sufficiency of the evidence.

{¶6} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams,* 9th Dist. No. 24731, 2009–Ohio–6955, at

¶18, citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386. The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility and we make all reasonable inferences in favor of the State. *State v. Jenks* (1991), 61 Ohio St.3d 249, 273. The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. Id.

{¶7} R.C. 2903.11(A)(1), the statute prohibiting felonious assault, provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another[.]" Under R.C. 2901.21(A), "a person is not guilty of an offense unless * * * [t]he person's liability is based on conduct that includes * * * a voluntary act" and "[t]he person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the section defining the offense."

{¶8} Mr. Westfall does not dispute that he struck Mr. Gunter's face with his hand or that he caused Mr. Gunter's injuries. Instead, he claims that his action was involuntary and that the prosecution failed to show that he acted "knowingly." "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "[W]hether a person acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including the doing of the act itself." *State v. Huff* (2001)*, 145 Ohio App.3d 555, 563. Further, "[i]f a given result is probable, a person will be held to have acted knowingly to achieve it because one is charged by the law with knowledge of the reasonable and probable

consequences of his own acts." (Internal quotations and citations omitted.) *State v. Murphy*, 9th Dist. No. 24753, 2010-Ohio-1038, at ¶15.

{¶9} In the instant matter, both Mr. Gunter and Courtney Garza testified for the State. Mr. Gunter testified that when he, Courtney and Felicia Garza and Kaitlyn Kurt arrived at the basketball court, Mr. Westfall, Dalton and Brad Estep, and Ben Gillespie were already there playing basketball. Mr. Gunter stated that he did not know any of the individuals well. When Mr. Gunter saw that they were already on the court, he told Felicia Garza that he did not want to go over towards them because of the money he owed, but Felicia told Mr. Gunter that the others did not have a problem with Mr. Gunter. As Mr. Gunter started to walk over with his group, Mr. Westfall and Dalton Estep stopped playing basketball. According to Mr. Gunter, Mr. Westfall and Dalton Estep approached Mr. Gunter and proceeded to ask him about money that he owed Mr. Gillespie for a bike he had bought from Mr. Gillespie. They asked Mr. Gunter when he was going to pay the money and Mr. Gunter shrugged his shoulders and put his hands in his pockets. Mr. Gunter testified that Mr. Westfall got in his face and tried to grab for Mr. Gunter's pockets. Thereafter, Mr. Gunter pushed Mr. Westfall back and then Mr. Westfall hit Mr. Gunter in the jaw. As Mr. Gunter was walking towards the car to leave, according to Mr. Gunter, Mr. Westfall told Mr. Gunter not to go to the police. Mr. Westfall apologized and stated that he "was mad[] [Mr. Gunter] owed [Mr. Gillespie] money, [Mr. Gunter] wouldn't give it to him, so [Mr. Westfall] hit [Mr. Gunter]." Ultimately, because of the punch, Mr. Gunter suffered a broken jaw, lost teeth and had to have his jaw wired shut for several weeks.

{¶10} Based solely upon Mr. Gunter's testimony and when viewing it in a light most favorable to the State, there was sufficient evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that Mr. Westfall knowingly struck Mr. Gunter causing

serious physical harm. R.C. 2903.11(A)(1). Given the circumstances surrounding the incident as reported by Mr. Gunter, the trier of fact could reasonably infer that Mr. Westfall was angry at Mr. Gunter for failing to pay the money that he allegedly owed and that Mr. Westfall knowingly hit Mr. Gunter which resulted in the injury that neither side disputes constitutes serious physical harm under the statute. R.C. 2903.11(A)(1); see, also, *Murphy* at ¶15. Therefore, we overrule Mr. Westfall's first assignment of error.

ASSIGNMENT OF ERROR II

> "THE VERDICT FINDING APPELLANT GUILTY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE BECAUSE THERE WAS NO SUBSTANTIAL EVIDENCE UPON WHICH A TRIER OF FACT COULD REASONABLY CONCLUDE THAT THE ELEMENTS OF THE OFFENSE HAD BEEN PROVED BEYOND A REASONABLE DOUBT."

{¶11} Mr. Westfall argues in his second assignment of error that his conviction for felonious assault is against the manifest weight of the evidence. Specifically, he attacks the credibility of Mr. Gunter's testimony and argues that the court erroneously failed to consider the affirmative defense of self-defense. Essentially, Mr. Westfall argues that the conviction is against the manifest weight of the evidence because the evidence supports the conclusion that he accidentally hit Mr. Gunter while he was trying to defend himself from him, and, thus, his actions were not done knowingly.

{¶12} In reviewing a challenge to the weight of the evidence, the appellate court "'[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thomas,* 9th Dist. Nos. 22990, 22991, 2006–Ohio–4241, at ¶7, quoting *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

{¶13} In reversing a conviction as being against the manifest weight of the evidence, "the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thomas* at ¶8, citing *Thompkins*, 78 Ohio St.3d at 388. Accordingly, "this Court's 'discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Thomas* at ¶8, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶14} Mr. Westfall first asserts that Mr. Gunter's testimony was not credible, and, therefore, Mr. Westfall's conviction is against the manifest weight of the evidence. While it is true that Mr. Gunter's testimony differs from that of other witnesses in several respects, that fact alone does not necessitate the conclusion that Mr. Westfall's conviction is against the manifest weight of the evidence. All of the witnesses who saw the altercation testified that Mr. Westfall struck Mr. Gunter. However, the testimony on how that happened differs depending on the witness. Mr. Gunter was the only witness to report that Mr. Westfall hit him from behind, a fact that Mr. Gunter did not report to the police. In addition, Mr. Gunter was the only witness to state that Mr. Westfall tried to reach into Mr. Gunter's pockets or that Mr. Gunter pushed Mr. Westfall. Mr. Gunter admitted during his testimony that he told police that Dalton Estep also hit him. Mr. Gunter further explained that at the time he believed two people struck him, but he later came to understand that only one person hit him and that person was Mr. Westfall. Mr. Gunter was also the only witness who denied that there was an additional confrontation concerning rumors about Mr. Westfall's girlfriend.

{¶15} Two witnesses, Felicia Garza and Bradley Estep denied seeing the actual punch. Courtney Garza, Dalton Estep, and Mr. Westfall each testified that Mr. Westfall only struck Mr. Gunter after Mr. Gunter "flinch[ed]" at Mr. Westfall. Mr. Westfall testified that he confronted

Mr. Gunter about rumors circulating about Mr. Westfall's girlfriend and that Dalton Estep also confronted Mr. Gunter about the money that was owed. Mr. Westfall stated that after he turned back from looking at Dalton Estep, he looked at Mr. Gunter and thought Mr. Gunter was going to hit him as he had his "hands up[,]" his fists were clenched, and he was "going to flinch at me[.]" Mr. Westfall further testified that in response, "I just put my hands up to block it and I contacted his face." Mr. Westfall testified that his intention in putting his hands up was to "keep [him]self from getting hit and blocking [him]self." Mr. Westfall admitted that Mr. Gunter never stepped towards him, nor did he swing at or contact Mr. Westfall. In addition, Mr. Westfall acknowledged that he was aware of the damage one could cause by hitting someone in the face.

{¶16} After independently reviewing the evidence, we cannot conclude that the trial court was unreasonable in its credibility determinations. See *State v. Singer,* 9th Dist. No. 25321, 2011-Ohio-917, at ¶12. Even Mr. Westfall's friends agreed that Mr. Westfall hit Mr. Gunter. Thus, even assuming that the events did not occur in the manner in which Mr. Gunter testified they did, Mr. Gunter's testimony that he was struck by Mr. Westfall was certainly corroborated by the other testimony, which the trier of fact could have reasonably viewed as lending credibility to portions of Mr. Gunter's testimony. Further, the trier of fact could have reasonably questioned the credibility of several of the defense witnesses who were all close friends of Mr. Westfall. Thus, we turn to Mr. Westfall's argument that the trial court erroneously failed to consider self-defense.

{¶17} We begin by noting that at one point in the trial while addressing an objection related to a witness's use of the phrase self-defense, the trial court specifically stated that "[t]he Court will make a determination obviously of whether or not the defense of self-defense has been established." Thus, we disagree that the trial court entirely failed to consider the defense.

{¶18} In addition, we note that in closing argument, while defense counsel discussed both accident and self-defense, defense counsel specifically stated that "I'm not going to argue self-defense other than say this was an accident, [Mr. Westfall] had no intention of touching him." Thus, it appears that defense counsel abandoned the argument that Mr. Westfall acted in self-defense and instead argued that any contact with Mr. Gunter was accidental. Notably, the concepts of accident and self-defense are diametrically opposed. See e.g., *State v. Perry*, 9th Dist. No. 25271, 2011-Ohio-2242, at ¶23, quoting *State v. Howe* (July 25, 2001), 9th Dist. No. 00CA007732, quoting *State v. Barnd* (1993), 85 Ohio App.3d 254, 260 ("'While accident "involves the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act," one claiming self-defense "concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions."'").

{¶19} However, notwithstanding the foregoing, the trial court's conclusion that Mr. Westfall committed felonious assault, and, thus, its implicit conclusion that Mr. Westfall did not act in self-defense was not against the manifest weight of the evidence. "Self-defense is an affirmative defense, which a defendant must prove by a preponderance of the evidence." *State v. Little*, 9th Dist. No. 10CA009758, 2011-Ohio-768, at ¶23.

> "In general, to establish self-defense, including self-defense involving deadly force, the defendant must prove that: '(1) the defendant was not at fault in creating the situation giving rise to the affray; (2) the defendant has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the defendant must not have violated any duty to retreat or avoid the danger.' *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶4, citing *State v. Robbins* (1979), 58 Ohio St.2d 74, * * * paragraph two of the syllabus.
>
> "However, if the defendant uses non-deadly force to defend himself[,] this Court has held that, 'the defendant must prove: (1) he was not at fault in creating the situation which gave rise to the event in which the use of non-deadly force occurred; (2) he had honest and reasonable grounds to believe that such conduct was necessary to defend himself against the imminent use of unlawful force; and

(3) the force used was not likely to cause death or great bodily harm.' [*State v.*] *Hatfield*[, 9th Dist. No. 23716, 2008-Ohio-2431,] at ¶ 9, quoting *State v. Tanner,* 9th Dist. No. 3258-M, 2002-Ohio-2662, at ¶21.

"Thus, in general, 'one may use such force as the circumstances require to protect oneself against such danger as one has good reason to apprehend.' *Akron v. Dokes* (1986), 31 Ohio App.3d 24, 25 * * * ; see, also, *State v. Williford* (1990), 49 Ohio St.3d 247, 249 * * * . Here, it is unclear which standard the trial court utilized; however under the facts of this case, the result of our analysis would be the same applying either." *State v. Gates*, 9th Dist. No. 24941, 2010-Ohio-2994, at ¶7.

{¶20} In the instant matter, it would not be unreasonable for the trier of fact to conclude that Mr. Westfall's response to Mr. Gunter's "flinch[ing]" was disproportionate or that Mr. Westfall was acting in a preemptive manner, as opposed to a responsive manner. Given what little action Mr. Gunter took against Mr. Westfall and given the number of friends Mr. Westfall had surrounding him, a reasonable trier of fact could reasonably conclude that Mr. Westfall did not have an honest belief that his conduct was necessary to defend himself from unlawful force. See id. Thus, we cannot say that the trial court acted unreasonably in rejecting Mr. Westfall's self-defense argument.

{¶21} Accordingly, upon thorough review of the record, we do not conclude that "in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340. Mr. Westfall's second assignment of error is overruled.

III.

{¶22} In light of the foregoing, the judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

—————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
DICKINSON, J.
CONCUR

APPEARANCES:

KREIG J. BRUSNAHAN, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.