[Cite as *State v. Lloyd*, 2021-Ohio-1808.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,          :

                                      No. 109128

    v.                           :

CRONIE W. LLOYD,                        :

    Defendant-Appellant.        :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 27, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-637149-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Katherine Mullin and Brandon Summers, Assistant Prosecuting Attorneys, *for appellee.*

Cullen Sweeney, Cuyahoga County Public Defender, and Paul A. Kuzmins, Assistant Public Defender, *for appellant.*

EILEEN T. GALLAGHER, J.:

{¶ 1} Defendant-appellant, Cronie W. Lloyd ("Lloyd"), appeals from his convictions and sentence following a jury trial. He raises the following assignments of error for review:

1. Mr. Lloyd was denied due process of law and his right to a fair and impartial jury when the state was improperly permitted to remove a juror for cause.

2. Mr. Lloyd was denied the effective assistance of counsel where trial counsel failed to request a jury instruction on the lesser-included offenses of assault and involuntary manslaughter.

3. Mr. Lloyd was denied the effective assistance of counsel where trial counsel failed to request a jury instruction on the inferior offense of aggravated assault and voluntary manslaughter.[1]

4. Mr. Lloyd was denied due process of law and the trial court committed plain error when it failed to instruct the jury on the offenses raised by the evidence.

5. Mr. Lloyd's convictions for felonious assault and felony-murder are not supported by sufficient evidence.

{¶ 2} After careful review of the record and relevant case law, we affirm Lloyd's convictions and sentence.

## I. Procedural and Factual History

{¶ 3} In February 2019, Lloyd was named in a two-count indictment, charging him with murder in violation of R.C. 2903.02(B), and felonious assault in violation of R.C. 2903.11(A)(1), with notice of prior conviction and repeat violent offender specifications. The indictment stemmed from allegations that Lloyd, then 48 years old, caused the death of the 83-year old victim, Gary Power ("Power"), during the commission of a felonious assault offense. Lloyd pleaded not guilty to

---

[1] Although the offense of voluntary manslaughter is identified in the third assignment of error, Lloyd has not presented an argument concerning the applicability of the offense in his appellate brief.

the offenses and the matter proceeded to a jury trial where the following facts were adduced.

{¶ 4} On February 3, 2019, Lloyd and Power were involved in a minor traffic accident while leaving a bar located in Independence, Ohio. The men pulled their vehicles into a nearby gas station, where they proceeded to engage in a verbal argument. During the verbal dispute, the men made gestures towards their vehicles and assessed the damage caused by the accident. The men were standing several feet apart when Power began walking towards the rear of his vehicle. As Power walked past Lloyd, Lloyd suddenly threw a single punch, without warning, that connected with Power's jaw. Power immediately lost consciousness and fell to the ground, striking his head on the concrete. Lloyd unsuccessfully attempted to throw a second punch as Power was falling to the ground. The incident, which lasted less than two minutes, was captured by nearby surveillance cameras.

{¶ 5} Lloyd quickly fled the scene without rendering aid or calling 911. Officer Everett Haworth ("Officer Everett") of the Independence Police Department testified that he was patrolling the area when he observed Lloyd's vehicle pull out of the gas station at a high rate of speed. Upon observing Lloyd drive through a red light, Officer Haworth activated his overhead lights and attempted to initiate a traffic stop of Lloyd's vehicle. Lloyd, however, ignored Officer Haworth's siren and "continued to accelerate." (Tr. 170.) Officer Haworth explained that he decided to terminate his pursuit of Lloyd's vehicle because he received a radio broadcast to respond to an altercation that was taking place in the parking lot of a nearby Denny's

restaurant. Officer Haworth stated that he prioritized the "40-person brawl" over Lloyd's traffic violations.

{¶ 6} After resolving the purported conflict in the Denny's parking lot, Officer Haworth noticed that there was a vehicle parked at the gas station where his pursuit of Lloyd's vehicle had begun. Upon further investigation, Officer Haworth observed "an older white male," later identified as Power, "laying on the pavement." (Tr. 171.) Power was unconscious and had a large laceration on the back of his head. Officer Haworth immediately called for an ambulance, and Power was transported to a nearby hospital. Power was pronounced dead two days after sustaining his injuries.

{¶ 7} Officer Haworth testified that he then made contact with the gas station attendant and obtained permission to review the gas station's security video footage. Based on his review of the video footage, Officer Haworth determined that a crime had occurred and that it was necessary to secure the scene and Power's vehicle. Relevant to this appeal, Officer Haworth testified that he collected a cigarette that was found near Power's body. Officer Haworth explained that he "believe[d] that the cigarette may have fallen from either the suspect or the victim." (Tr. 178.)

{¶ 8} Sergeant Michael Murphy ("Sgt. Murphy") of the Independence Police Department testified that he was assigned to investigate the incident. In the course of his investigation, Sgt. Murphy photographed Power in the hospital, spoke with Power's relatives, and reviewed surveillance footage recovered from the gas station and the bar where Lloyd and Power had been prior to the traffic accident. Following Power's death, the investigating officers submitted physical evidence to the crime

laboratory for forensic testing, including the cigarette recovered from the scene and swabs taken from areas of Power's vehicle that Lloyd had touched to regain his balance after punching Power.

{¶ 9} Andrea Davis ("Davis"), a forensic scientist with the Ohio Bureau of Criminal Investigation, testified that the cigarette and a swab taken from the passenger's side door of Power's vehicle contained a profile that was consistent with Lloyd's DNA. In addition, the investigating officers confirmed that Lloyd was the owner of a vehicle that was the same color, make, and model as the vehicle depicted on the surveillance video footage.

{¶ 10} Dr. David Dolinak, M.D. ("Dr. Dolinak"), provided extensive testimony regarding Power's medical history and the scope and nature of his injuries. Based on his review of the relevant medical records, Dr. Dolinak testified that Power sustained extensive head injuries, including fractures of his skull and bleeding and bruising in his brain. Dr. Dolinak explained that the initial impact to the left side of Power's jaw cause him to "fall to the ground hard enough to hit his head fairly hard on the ground." (Tr. 428.) Based on the nature and extent of his injuries, Dr. Dolinak opined, to a reasonable degree of medical certainty, that Power's cause of death was a blunt force head injury and that the manner of death was a homicide.

{¶ 11} At the conclusion of trial, Lloyd was found guilty of murder and felonious assault as charged in the indictment. He was sentenced to life in prison with the possibility of parole after 15 years.

{¶ 12} Lloyd now appeals from this convictions and sentence.

## II. Law and Analysis

## A. Removal of Juror

{¶ 13} In his first assignment of error, Lloyd argues he was denied due process of law and the right to a fair and impartial jury when the trial court improperly permitted the state to remove Juror No. 7 for cause. Lloyd contends that there was not good cause shown for the removal of the juror for bias and, therefore, the state was essentially provided with an additional peremptory challenge than provided under law.

{¶ 14} Defendants in criminal prosecutions are guaranteed the right to a trial by an impartial jury through the Due Process Clause of the Fourteenth Amendment and Sixth Amendment to the United States Constitution, as well as the Ohio Constitution, Article I, Section 10. *See Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). Due process requires "an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.'" *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 554, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984), quoting *Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). "Voir dire examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors." *Id.*

{¶ 15} The Rules of Criminal Procedure regulate the number and manner of exercising peremptory challenges. Crim.R. 24(D) and (E). Peremptory challenges provide both a defendant and the state an opportunity to dismiss potential jurors for

any reason, except for an impermissible basis such as race or gender, without inquiry and without the trial court's approval. *See* Crim.R. 24(D); *see also State v. Reynolds*, 80 Ohio St.3d 670, 675, 687 N.E.2d 1358 (1998). To ensure that the parties are equally able to employ peremptory challenges, Crim.R. 24 mandates that they receive the same number of peremptory challenges.

{¶ 16} Challenges for cause permit the parties to reject jurors on narrowly specified bases that must be demonstrated in the record and found by the trial court. Crim.R. 24(C). A prospective juror may be challenged for cause if he or she demonstrates bias toward the defendant or the state. R.C. 2945.25(B); Crim.R. 24(C)(9). Moreover, pursuant to R.C. 2313.17(B)(9), a potential juror may be challenged for cause if the person "discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court."

{¶ 17} The trial court has broad discretion in determining a juror's ability to be impartial. *State v. Nields*, 93 Ohio St.3d 6, 20, 752 N.E.2d 859 (2001). Resolution of the impartiality issue rests in large part on the trial court's assessment of the juror's credibility and demeanor, and the context in which the issue arises. *Skilling v. U.S.*, 561 U.S. 358, 386, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010); *State v. Williams*, 79 Ohio St.3d 1, 8, 679 N.E.2d 646 (1997). Therefore, a reviewing court will defer to the trial judge who sees and hears the juror. *See, e.g., Chang v. Cleveland Clinic Found.*, 8th Dist. Cuyahoga No. 82033, 2003-Ohio-6167, ¶ 6.

{¶ 18} We review the trial court's decision on whether to remove a juror for cause for an abuse of discretion. *State v. Smith*, 80 Ohio St.3d 89, 105, 684 N.E.2d 668 (1997). "A court abuses its discretion when a legal rule entrusts a decision to a judge's discretion, and the judge's exercise of that discretion is outside of the legally permissible range of choices." *State v. Hackett*, Slip Opinion No. 2020-Ohio-6699, ¶ 19, citing *U.S. v. E.I. du Pont de Nemours & Co.*, 366 U.S. 316, 372, 81 S.Ct. 1243, 6 L.Ed.2d 318 (1961) (Frankfurter, J., dissenting). Abuse-of-discretion review is deferential and does not permit an appellate court to simply substitute its judgment for that of the trial court. *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

{¶ 19} In this case, Juror No. 7 indicated that her nephew had previously been convicted of a felony offense in Cuyahoga County. The juror expressed her belief that her nephew was "unfairly convicted" and endured an unfair prosecution. (Tr. 70; 73.) In response to her statements, the prosecutor asked Juror No. 7 whether she believed she could be fair to the state of Ohio. The juror indicated that she could not be fair because she was still upset about the state's role in her nephew's criminal conviction. (Tr. 74.) When asked by defense counsel if she could listen to the evidence and render a fair decision, the juror responded, "probably." (Tr. 75.) At the conclusion of voir dire, the state sought to remove Juror No. 7 for good cause. The trial court granted the state's request, finding that Juror No. 7 "clearly can't be fair." (Tr. 141.)

{¶ 20} After careful review of the voir dire transcript, we are unable to conclude that the trial court abused its discretion by excusing Juror No. 7 for cause. Juror No. 7's answers to the state's questions gave reasonable cause for concern that she could not be fair and impartial, supporting a valid challenge under R.C. 2313.17. Moreover, and without addressing the implications of a "principal challenge" as defined under R.C. 2913.17(B)(9) and (C),[2] we are not persuaded by Lloyd's contention that Juror No. 7 was sufficiently rehabilitated by defense counsel. Although defense counsel attempted to demonstrate that Juror No. 7 was capable of applying the law to the facts of this case, the prospective juror declined to state with certainty that she could be fair and impartial, and maintained her position that "people lie" and "get away with stuff." (Tr. 75.) Under these circumstances, we find the record supports the trial court's dissatisfaction with defense counsel's attempt

---

[2] R.C. 2313.17, provides, in relevant part:

The following are good causes for challenge to any person called as a juror:

* * *

(9) That the person discloses by the person's answers that the person cannot be a fair and impartial juror or will not follow the law as given to the person by the court.

(C) Each challenge listed in division (B) of this section shall be considered as a principal challenge, and its validity tried by the court.

*Id.* *See Hunt v. E. Cleveland*, 2019-Ohio-1115, 128 N.E.3d 265, ¶ 34 (8th Dist.) (finding "a challenge under R.C. 2313.17(B)(9) is a 'principal challenge.'"); *see also Cordova v. Emergency Professional Servs.*, 2017-Ohio-7245, 96 N.E.3d 906, ¶ 27 (8th Dist.) ("[W]here a party establishes the existence of facts supporting a principal challenge, this finding 'result[s] in automatic disqualification,' and no rehabilitation of the potential juror can occur.").

to show that Juror No. 7's expressed biases would not substantially impair the performance of her duty.

{¶ 21} Lloyd's first assignment of error is overruled.

### B. Ineffective Assistance of Counsel

{¶ 22} In his second and third assignments of error, Lloyd argues defense counsel rendered ineffective assistance of counsel by (1) failing to request a jury instruction on the lesser-included offenses of assault and involuntary manslaughter, and (2) by failing to request a jury instruction on the inferior offense of aggravated assault.

{¶ 23} The lesser-included-offense doctrine is codified in Ohio law in R.C. 2945.74 and Crim.R. 31(C), which are substantially similar. R.C. 2945.74 provides, in relevant part:

> When the indictment or information charges an offense, including different degrees, or if other offenses are included within the offense charged, the jury may find the defendant not guilty of the degree charged but guilty of an inferior degree thereof or lesser-included offense.

*See also* Crim.R. 31(C).

{¶ 24} A lesser-included offense is one in which

> (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense.

*State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph three of the syllabus. By contrast, "an offense is an 'inferior degree' of the indicted offense where

its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements." *Id.* at paragraph two of the syllabus.

{¶ 25} Generally, "a charge on a lesser-included or inferior offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included or inferior offense." *State v. Carter*, 2018-Ohio-3671, 119 N.E.3d 896, ¶ 59 (8th Dist.), citing *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus. In determining whether a lesser-included or inferior offense instruction is appropriate, the trial court must view the evidence in the light most favorable to the defendant. *Id.* at ¶ 59, citing *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37. An instruction is not warranted, however, every time "some evidence" is presented on a lesser-included or inferior offense. *State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, ¶ 12, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992).

> To require an instruction * * * every time some evidence, however minute, is presented going to a lesser-included (or inferior-degree) offense would mean that no trial judge could ever refuse to give an instruction on a lesser-included (or inferior-degree) offense.

*Id.*, quoting *Shane* at 633. Thus, a court must find there is sufficient evidence to allow a jury to reasonably reject the greater offense and find the defendant guilty on the lesser-included or inferior offense. *Shane* at 632-633.

{¶ 26} Relevant to this case, the parties do not dispute that the misdemeanor offense of assault in violation of R.C. 2903.13(A) is a lesser-included offense of

felonious assault. *See State v. Addison*, 8th Dist. Cuyahoga No. 96514, 2012-Ohio-260, ¶ 34, citing *State v. Caster*, 8th Dist. Cuyahoga No. 87783, 2006-Ohio-6594. The charge of simple assault requires a person to knowingly cause physical harm as opposed to the element of serious physical harm required for felonious assault. In addition, this court has recognized that the offense of involuntary manslaughter is a lesser-included offense of murder in violation of R.C. 2903.02. *State v. Johnson*, 8th Dist. Cuyahoga No. 108621, 2020-Ohio-2940, ¶ 42, citing *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 79; *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph one of the syllabus.

{¶ 27} In turn, although the offense of aggravated assault is not a lesser-included offense of felonious assault, it is an inferior-degree offense. *Deem*, 40 Ohio St.3d 205, at 210-211, 533 N.E.2d 294 (1988). Aggravated assault is an inferior-degree offense of felonious assault because the elements of the two crimes are identical except that aggravated assault contains the additional mitigating element of serious provocation. *Id.* Thus, the difference between the elements of aggravated and felonious assault is provocation involving sudden passion or fit of rage. *State v. McDuffie*, 8th Dist. Cuyahoga No. 100826, 2014-Ohio-4924, ¶ 22.

> Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time.

*State v. Mabry*, 5 Ohio App.3d 13, 449 N.E.2d 16 (8th Dist.1982), paragraph five of the syllabus.

{¶ 28} In *Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272, the Supreme Court elaborated on what constitutes "reasonably sufficient" provocation in the context of voluntary manslaughter. First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage. That is, the provocation must be "sufficient to arouse the passions of an ordinary person beyond the power of his or her control." *Id.* at 635. If this objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case "actually was under the influence of sudden passion or in a sudden fit of rage." *Id.* at 634-635.

{¶ 29} With the foregoing standards in mind, Lloyd argues the evidence adduced at trial warranted additional jury instructions on the applicable lesser-included and inferior-degree offenses. Because defense counsel failed to request the jury instructions, Lloyd contends he was denied his constitutional right to effective assistance of counsel. To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he or she was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

{¶ 30} In Ohio, a licensed attorney is presumed to be competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 714 N.E.2d 905 (1999). In evaluating trial counsel's performance, appellate review is highly deferential as there is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland* at 689. Appellate courts are not permitted to second-guess the strategic decisions of trial counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Even instances of debatable strategy very rarely constitute ineffective assistance of counsel. *See State v. Thompson*, 33 Ohio St.3d 1, 10, 514 N.E.2d 407 (1987).

{¶ 31} Relevant to the circumstances presented in this case, it is well settled that there is a presumption that "the failure to request an instruction on a lesser-included offense constitutes a reasonable 'all or nothing' trial strategy." *State v. Lewis*, 8th Dist. Cuyahoga No. 108463, 2020-Ohio-5265, ¶ 51, quoting *State v. Jackson*, 6th Dist. Sandusky No. S-15-020, 2016-Ohio-3278, ¶ 20. "By not requesting an instruction on a lesser-included offense, the hope is that the jury will acquit the defendant if the evidence does not support all the elements of the offense charged." *Id.* at ¶ 52, citing *State v. Vogt*, 4th Dist. Washington No. 17CA17, 2018-Ohio-4457, ¶ 119 ("It would have been inconsistent to argue for complete acquittal while at the same time arguing for the lesser-included offense."); *State v. Viers*, 7th Dist. Jefferson No. 01JE19, 2003-Ohio-3483, ¶ 47 (Trial courts tend to overrule [ineffective assistance] arguments based upon reviewing court's deference to the all-or-nothing trial strategy.); *State v. Griffie*, 74 Ohio St.3d 332, 333, 658 N.E.2d 764

(1996) ("Failure to request instructions on lesser-included offenses is a matter of trial strategy and does not establish ineffective assistance of counsel.").

{¶ 32} Regarding the applicable lesser-included offenses, Lloyd argues defense counsel rendered ineffective assistance of counsel by failing to request a jury instruction on assault and involuntary manslaughter because the state failed to establish that he knowingly caused the victim serious physical harm. This argument fails to overcome the presumption that defense counsel made a tactical decision to seek an acquittal rather than a conviction on a lesser-included offense. Similar to the sufficiency of the evidence arguments posed in Lloyd's fifth assignment of error, defense counsel argued throughout closing arguments that the nature and breadth of Lloyd's conduct in this case could not support the necessary elements of felonious assault and felony murder. While defense counsel did not dispute that Lloyd struck Power, she reiterated that Lloyd landed a single punch and could not have acted knowingly or otherwise anticipated the serious physical harm that resulted from the impact of Power's fall. We recognize that Lloyd believes that counsel's theory of defense was inadequate or impractical under the facts of this case. However, the decision about which defense or theory to pursue at trial is a matter of trial strategy "'within the exclusive province of defense counsel to make after consultation with his [or her] client.'" *State v. Murphy*, 91 Ohio St.3d 516, 524, 747 N.E.2d 765 (2001), quoting *Lewis v. Alexander*, 11 F.3d 1349, 1354 (6th Cir.1993). Accordingly, we cannot say counsel's performance was deficient simply because she decided not to request a lesser-included offense instruction.

{¶ 33} Furthermore, we are unable to conclude that defense counsel rendered ineffective assistance of counsel by failing to request a jury instruction on the inferior-degree offense of aggravated assault. Importantly, the test utilized to determine if an instruction should have been given on an inferior-degree offense is the same test used to determine if an instruction should have been given on a lesser-included offense. *Shane*, 63 Ohio St.3d 630, at 632, 590 N.E.2d 272. In this case, defense counsel argued during closing arguments that while Lloyd "was not provoked," the state failed to prove the necessary elements for a felonious assault conviction beyond a reasonable doubt. Counsel argued that the single punch only caused minimal injuries to Power's jaw, while the unforeseen and unpredictable fall was the ultimate cause of death.

{¶ 34} Contrary to, and inconsistent with, defense counsel's theory and interpretation of the evidence, Lloyd now argues that a jury instruction on the inferior-degree offense of aggravated assault was warranted in this case because the evidence established that he acted in a sudden fit of rage that was provoked by the victim and the circumstances surrounding the car accident. As stated, however, defense counsel sought an acquittal in this case based upon her perception of the state's evidence; not a conviction on an inferior offense. *See State v. Scarton*, 8th Dist. Cuyahoga No. 108474, 2020-Ohio-2952, ¶ 99; *State v. Lenard*, 8th Dist. Cuyahoga Nos. 105342 and 105343, 2018-Ohio-4847, ¶ 18; *State v. Carter*, 8th Dist. Cuyahoga No. 104653, 2017-Ohio-5573, ¶ 53-54 (Failing to request an instruction on an inferior offense does not rise to the level of ineffective assistance of counsel

where trial counsel's strategy was to obtain an acquittal rather than a conviction of an inferior offense.). Such a trial strategy, even if "questionable" or "if, in hindsight, it looks as if a better strategy had been available," does not support a claim of ineffective assistance of counsel. *See, e.g., State v. Cottrell*, 4th Dist. Ross Nos. 11CA3241 and 11CA3242, 2012-Ohio-4583, ¶ 21; *State v. Henderson*, 7th Dist. Mahoning No. 15 MA 0137, 2018-Ohio-2816, ¶ 71-73. Accordingly, we find Lloyd has failed to overcome the presumption that defense counsel's decision to forego an inferior-degree-offense instruction was a strategic maneuver designed to obtain an acquittal, instead of a conviction on an inferior-degree-offense. *See, e.g., State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 73.

{¶ 35} Lloyd's second and third assignments of error are overruled.

## C. Plain Error

{¶ 36} In his fourth assignment of error, Lloyd argues the trial court committed plain error when it failed to instruct the jury on the lesser-included and inferior-degree offenses that were supported by the evidence.

{¶ 37} Ordinarily, an appellate court reviews a trial court's refusal to instruct the jury on a lesser-included offense under the abuse of discretion standard. *State v. Henderson*, 8th Dist. Cuyahoga No. 89377, 2008-Ohio-1631, ¶ 10, citing *State v. Wright*, 4th Dist. Scioto No. 01 CA2781, 2002-Ohio-1462. As discussed, however, Lloyd failed to request instructions on lesser-included or inferior-degree offenses. Thus, our review of the trial court's failure to sua sponte provide the disputed instructions is limited to plain error. To establish plain error, a defendant must

show that (1) there was an error or deviation from a legal rule, (2) the error was plain and obvious, and (3) the error affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). Notice of plain error "is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 108.

{¶ 38} In this assigned error, Lloyd reiterates his argument that a jury could have reasonably found that his conduct against Power was provoked or, alternatively, resulted in physical harm rather than serious physical harm. Thus, Lloyd maintains that the trial court committed plain error by failing to provide jury instructions on the inferior-degree offense of aggravated assault and the lesser-included offenses of assault and involuntary manslaughter. Lloyd contends that the "trial court's failure to give the required instructions * * * led to a sentence that is disproportionate to Lloyd's conduct and morally incongruent with his conduct."

{¶ 39} After careful review, we find the circumstances presented in this case are analogous to those addressed by the Ohio Supreme Court in *State v. Clayton*, 62 Ohio St.2d 45, 47-48, 402 N.E.2d 1189 (1980). In *Clayton*, the defendant was charged with and convicted of two counts of attempted murder. *Id.* at 45. On appeal, the defendant challenged trial counsel's decision not to request a jury instruction on the lesser-included offense of attempted voluntary manslaughter. *Id.* at 46, 48-49. The Ohio Supreme Court held that the decision not to request the mitigating instruction, despite being a "questionable" strategy, did not rise to the

level of ineffective assistance of counsel. *Id.* at 48-49. Simply because there was "another and better strategy available" did not mean that counsel provided ineffective assistance. *Id.* at 49. In addition, the court found the trial court did not commit plain error by failing to provide the jury instructions sua sponte. Noting that trial counsel's decision not to request an instruction on a lesser-included offense was based on "counsel's strategy to seek a total acquittal for [Clayton]," the court held that a defendant "cannot claim the protections of Crim.R. 52(B) to negate the effect of [a] tactical decision." *Id.* at 47. The court explained as follows:

> Even if the defendant did elicit some evidence of mitigating circumstances (fit of anger), he still had the right to intentionally waive a jury instruction on the lesser-included offense of attempted voluntary manslaughter. Having elicited some evidence in mitigation of attempted murder, the court had the duty to instruct on the lesser-included offense, but this in no way affected defendant's concomitant right, through his counsel, to waive the instruction.

*Id.* at 47, fn. 2.

{¶ 40} Since the release of *Clayton*, the Ohio Supreme Court has continued to emphasize that the decision establishes "the consequences that follow a defendant's decision to waive a jury instruction that may have inured to his benefit." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 31. In *Wine*, the court reiterated the implications of the plain error doctrine and the deference given to counsel's trial strategy, stating:

> In *Clayton*, this court held that defendant's counsel's decision not to request an instruction on lesser-included offenses — seeking acquittal rather than inviting conviction on a lesser offense — was a matter of trial strategy. *Id.* This court essentially said in *Clayton*'s second footnote that although the trial court erred in not including the lesser-

included-offense charge, the defendant waived that error in furtherance of his counsel's trial strategy. Once the defendant made his tactical gambit * * * he could not then successfully claim plain error upon appeal. This court thus concluded that the trial court's failure to instruct the jury on lesser-included offenses and the defendant's subsequent conviction "[did] not amount to a manifest miscarriage of justice and [was] not plain error." *Id.* at 47-48. This court further concluded that although his strategy was questionable, Clayton's counsel did not provide ineffective assistance. *Id.* at 49.

*Wine* at ¶ 30.

{¶ 41} Thus, the Ohio Supreme Court has clarified that although "it is the quality of the evidence offered * * * that determines whether a lesser-included offense charge should be given to a jury," *Wine* at ¶ 26, the court's failure to provide jury instructions on lesser-included or inferior-degree offenses does not amount to plain error "[w]hen the decision not to request a particular jury instruction may be deemed to be part of a reasonable trial strategy," *State v. Mohamed*, 151 Ohio St.3d 320, 2017-Ohio-7468, 88 N.E.3d 935, ¶ 27, citing *Clayton* at 47-48. "Put differently, a trial court does not commit plain error in failing to provide an unrequested jury instruction where the decision to not request the instruction could be considered trial strategy." *State v. Jones*, 4th Dist. Ross No. 16CA3574, 2018-Ohio-239, ¶ 27, citing *Mohamed* at ¶ 27.

{¶ 42} Having determined that counsel's decision not to request a jury instruction on the lesser-included or inferior-degree offenses fell within a reasonably trial strategy, we find the trial court did not commit plain error in failing to provide the jury the unrequested instructions. Lloyd has failed to show that the trial court's judgment was obvious error, that it deviated from clear legal rules, or

that it affected the outcome of the trial. *See, e.g., State v. Kiehl*, 11th Dist. Portage No. 2015-P-0020, 2016-Ohio-8543, ¶ 30, citing *State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 35; *State v. McDowell*, 10th Dist. Franklin No. 10AP-509, 2011-Ohio-6815, ¶ 44, *State v. White*, 6th Dist. Lucas No. L-06-1363, 2008-Ohio-2990, ¶ 56; *State v. Miller*, 6th Dist. Erie No. E-02-037, 2003-Ohio-6375, ¶ 17; *State v. Harris*, 129 Ohio App.3d 527, 533, 718 N.E.2d 488 (10th Dist.1998).

{¶ 43} Moreover, even if this court were to ignore the deference afforded to defense counsel's trial tactics, we find the court's failure to provide instructions on the lesser-included and inferior-degree offenses did not amount to plain error based on the evidence presented at trial.

{¶ 44} As previously stated, the misdemeanor offense of assault is a lesser-included offense of felonious assault. However, "when the victim suffers serious physical harm, a misdemeanor assault under R.C. 2903.13(A) should not be considered as a lesser-included offense of felonious assault." *State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 84, citing *State v. Thornton*, 2d Dist. Montgomery No. 20652, 2005-Ohio-3744, ¶ 48; *see also State v. Brisbon*, 8th Dist. Cuyahoga No. 105591, 2018-Ohio-2303, ¶ 27. Consistent with our discussion of the evidence supporting Lloyd's convictions below, we find the evidence presented at trial demonstrated that Lloyd knowingly caused Power serious physical harm. Thus, an acquittal on the felonious assault charge was not reasonable, and an instruction for the offense of assault was not warranted. In the absence of a misdemeanor

predicate offense, Lloyd's argument concerning an instruction on the lesser-included offense of involuntary manslaughter in violation of R.C. 2903.04(B)[3] is equally unsupported by the evidence. Accordingly, the trial court did not commit error, plain or otherwise, by failing to instruct the jury on the lesser-included offenses of assault and involuntary manslaughter.

{¶ 45} Finally, we find there was insufficient evidence of serious provocation, such that a jury could have reasonably acquitted Lloyd of felonious assault and convict him of aggravated assault. Beyond speculation concerning the words exchanged between Lloyd and Power, the record contains no evidence that Lloyd's actions were influenced by sudden passion or fit of rage at the time he punched Power. Rather, the evidence presented at trial demonstrated that Lloyd suddenly, and without warning, struck Power in his jaw as he attempted to walk past Lloyd while inspecting his vehicle. Viewing the conditions and circumstances surrounding the incident in their entirety, we find there is no evidence to conclude that Power's conduct was sufficient to arouse the passions of an ordinary person beyond the power of his or her control. Counsel admitted as much during closing arguments. Accordingly, Lloyd was not entitled to an instruction on aggravated assault.

{¶ 46} Lloyd's fourth assignment of error is overruled.

---

[3] Involuntary manslaughter is defined in R.C. 2903.04(B) as: "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree." The intent required to commit involuntary manslaughter is the intent assigned to the underlying offense. *State v. Losey*, 23 Ohio App.3d 93, 97, 491 N.E.2d 379 (10th Dist.1985).

## D. Sufficiency of the Evidence

{¶ 47} In his fifth assignment of error, Lloyd argues his convictions for felonious assault and felony murder are not supported by sufficient evidence.

{¶ 48} "[T]he test for sufficiency requires a determination of whether the prosecution met its burden of production at trial." *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. The state may use direct evidence, circumstantial evidence, or both, in order to establish the elements of a crime. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow." *State v. Seals*, 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32.

{¶ 49} Lloyd was found guilty of murder in violation of R.C. 2903.02(B). The statute provides, "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 [voluntary manslaughter] or 2903.04 [involuntary manslaughter] of the Revised Code." In this case, Lloyd was found guilty of causing Power's death while committing felonious assault under R.C. 2903.11(A)(1), an offense of violence as

defined by R.C. 2901.01(A)(9). R.C. 2903.11(A)(1) provides that, "[n]o person shall knowingly * * * [c]ause serious physical harm to another * * *."

{¶ 50} To have acted "knowingly," a person need not have specifically intended to cause a particular result. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). In other words, a defendant acts knowingly when, although not necessarily intending a particular result, he or she is aware that the result will probably occur.

{¶ 51} If a result is a probable consequence of a voluntary act, the actor "'will be held to have acted knowingly to achieve it'" because a person "'is charged by the law with knowledge of the reasonable and probable consequences of his [or her] own acts.'" *State v. Dixon*, 8th Dist. Cuyahoga No. 82951, 2004-Ohio-2406, ¶ 16, quoting *State v. McDaniel*, 2d Dist. Montgomery No. 16221, 1998 Ohio App. LEXIS 2039, 16 (May 1, 1998); *see also State v. McCurdy*, 10th Dist. Franklin No. 13AP-321, 2013-Ohio-5710, ¶ 16 ("'[F]elonious assault under R.C. 2903.11, combined with the definition of "knowingly" found in R.C. 2901.22(B), does not require that a defendant intended to cause "serious physical harm," but rather, that the defendant acted with an awareness that the conduct probably would cause such harm.'") (emphasis deleted), quoting *State v. Smith*, 10th Dist. Franklin No. 04Ap-726, 2005-Ohio-1765, ¶ 28. "Stated another way, when a defendant voluntarily acts in a manner that is likely to cause serious physical injury, the factfinder can infer that the defendant was aware that his actions would cause whatever injury results from

his actions, or, in other words, that he acted knowingly." *State v. Reed*, 8th Dist. Cuyahoga No. 89137, 2008-Ohio-312, ¶ 10. "'To be actionable it is only necessary that the result is within the natural and logical scope of risk created by the conduct.'" *State v. Hampton*, 8th Dist. Cuyahoga No. 103373, 2016-Ohio-5321, ¶ 13, quoting *State v. Smith*, 4th Dist. Ross No. 06CA2893, 2007-Ohio-1884, ¶ 29. The defendant need not have known that his or her actions would cause the precise injury sustained by the victim. *See, e.g., State v. Perez*, 8th Dist. Cuyahoga No. 91227, 2009-Ohio-959, ¶ 42. Absent an admission, whether a defendant acted "knowingly" must be determined "from all the surrounding facts and circumstances, including the doing of the act itself." *Dixon* at ¶ 16, quoting *State v. Huff*, 145 Ohio App.3d 555, 563, 763 N.E.2d 695 (1st Dist.2001).

{¶ 52} "Serious physical harm," as defined in R.C. 2901.01(A)(5), is very broad and includes any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

Loss of consciousness, "'irrespective of its duration,'" has been found to constitute severe physical harm under R.C. 2901.01(A)(5)(c). *State v. Watson*, 10th Dist. Franklin No. 17AP-834, 2018-Ohio-4964, ¶ 11, quoting *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19.

{¶ 53} Because Lloyd's murder conviction is predicated on the underlying felonious assault offense, Lloyd's sufficiency argument focuses on the evidence supporting his felonious assault conviction. On appeal, Lloyd does not dispute that the state presented sufficient evidence that he caused serious physical harm to Power. Rather, Lloyd argues that the state failed to present sufficient evidence that he *knowingly* caused Power to suffer serious physical harm. Lloyd contends that "it is simply not probable that serious physical harm would result from a single punch to the jaw of Mr. Power."

{¶ 54} In support of his position, Lloyd relies on the Tenth District's decision in *State v. McFadden*, 10th Dist. Franklin No. 95APA03-384, 1995 Ohio App. LEXIS 5144 (Nov. 21, 1995). In *McFadden*, the defendant was convicted of felonious assault after throwing one "blind-side punch" to the right side of the victim's head. *Id.* at 4, 12. The defendant and the victim were of "similar size and body weight" and the defendant lacked any "boxing or fighting experience." *Id.* at 11. The court indicated that, under the circumstances of that case, while it was "reasonable to assume that a person would expect one punch to cause physical harm to another person," it could not be said that "a reasonably prudent person would have been aware that the throwing of one punch had the propensity to cause serious physical

harm to another person." *Id*. at 11-12. Accordingly, the court held that the evidence was insufficient to convict the defendant of felonious assault. *Id*.

{¶ 55} After careful consideration, we are unpersuaded by Lloyd's reliance on *McFadden* and his assertion that the decision created a bright-line rule precluding a felonious assault conviction when an assailant with no fighting experience strikes a victim with a single punch. As outlined above, the determination of whether an assailant acted knowingly requires a review of all the facts and circumstances on a case-by-case basis. Furthermore, since *McFadden* was decided in 1995, numerous Ohio courts, including this court, have determined that a single punch to the head or face can support a conviction for felonious assault even in the absence of evidence that the assailant had fighting or boxing experience, or was more physically imposing than the victim. *See, e.g., State v. Jacinto*, 8th Dist. Cuyahoga No. 108944, 2020-Ohio-3722, ¶ 107, citing *State v. Watson*, 10th Dist. Franklin No. 17AP-834, 2018-Ohio-4964, ¶ 16 (affirming felonious assault conviction where defendant struck the victim "with a strong closed fist punch to the side of his head" with enough force "that it knocked [the victim] to the ground, left him unconscious for an extended period of time, and damaged his skull and brain"); *State v. Eisenman*, 10th Dist. Franklin No. 17AP-475, 2018-Ohio-934, ¶ 11-12 (affirming felonious assault conviction where defendant punched the victim once in the head with sufficient force to "knock [the victim] out immediately"); *Hampton*, 8th Dist. Cuyahoga No. 103373, 2016-Ohio-5321, at ¶ 2, 14, 24, 27-28 (evidence of a single, forceful intentional punch to the head could support the inference that defendant knowingly

caused serious physical harm); *State v. Westfall*, 9th Dist. Lorain No. 10CA009825, 2011-Ohio-5011, ¶ 2, 10 (single punch to the victim's face was sufficient to support felonious assault conviction); *State v. Shepherd*, 11th Dist. Ashtabula No. 2003-A-0028, 2006-Ohio-4315, ¶ 28 (one punch to the face with sufficient force to crack two of the victim's teeth was sufficient to support a conviction for felonious assault); *State v. Redman*, 3d Dist. Allen No. 1-15-54, 2016-Ohio-860, ¶ 22 ("'Punching someone in the face satisfies the requisite culpable mental state for felonious assault.'"), quoting *State v. Beaver*, 3d Dist. Union No. 14-13-15, 2014-Ohio-4995, ¶ 37; *State v. Vanover*, 4th Dist. Lawrence No. 98CA38, 1999 Ohio App. LEXIS 2357, 14-15 (May 16, 1999) ("[T]he mere act of punching someone in the head area carries with it the risk of causing serious physical harm. * * * Serious physical harm is unquestionably a natural and logical consequence of punching, without warning or provocation, an intoxicated person whose faculties are likely impaired.").

{¶ 56} In this case, the evidence adduced at trial showed that Lloyd, without warning or provocation, punched Power on the left side of his jaw with a closed fist. Power had no opportunity to brace himself and was knocked unconscious by the impact of Lloyd's blow. Power immediately fell to the ground and sustained severe brain injuries. Although Lloyd may not have anticipated that Power would sustain a serious brain injury, considering all the circumstances, it could be reasonably inferred that Lloyd knew that some form of serious physical harm to Power was a reasonable and probable consequence of his forceful punch to Power's jaw. The state did not have to prove that defendant intended to cause Power's death, only that

Lloyd knowingly caused serious physical harm. *Hampton*, 8th Dist. Cuyahoga No. 103373, 2016-Ohio-5321, at ¶ 28, citing *State v. Irwin*, 4th Dist. Hocking Nos. 03CA13 and 03CA14, 2004-Ohio-1129, ¶ 18.

{¶ 57} Moreover, we are unpersuaded by Lloyd's attempt to separate Power's injuries into two categories: (1) the minimal bruising to Power's jaw that resulted from the single punch, and (2) the significant head injuries sustained as a result of his fall. Although Lloyd contends that he should be held responsible for the former but not the latter, we reiterate that a defendant is responsible for the natural and logical consequences of his conduct. Thus, "it is not necessary that the accused be in a position to foresee the precise consequences of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct." *State v. Smith*, 4th Dist. Lawrence No. 94 CA 37, 1996 Ohio App. LEXIS 916, 22 (Mar. 6, 1996). Under the circumstances presented in this case, we find Power's fall and resulting head injuries were natural and logical consequences of Lloyd's conduct in punching the unsuspecting Power's in his head area. *See State v. Vanover*, 4th Dist. Lawrence No. 98CA38, 1999 Ohio App. LEXIS 2357, 14 (May 16, 1999) ("The victim falling down and striking his head against the pavement are natural and logical consequences of punching someone in the mouth.").

{¶ 58} Finally, we note that after Lloyd's punch rendered Power motionless on the ground, Lloyd simply fled the scene. Lloyd's response to the immediate impact of his punch could reasonably support the inference that he was

"unsurprised by its severity" and that he was aware that his punch to Power's jaw would probably cause him serious physical harm. *See Jacinto*, 8th Dist. Cuyahoga No. 108944 , 2020-Ohio-3722, at ¶ 110, citing *Watson*, 10th Dist. Franklin No. 17AP-834, 2018-Ohio-4964, at ¶ 16.

{¶ 59} Viewed in a light most favorable to the state, the evidence demonstrated beyond a reasonable doubt that Lloyd knowingly caused serious physical harm to Power that resulted in his death. Accordingly, we find there was sufficient evidence supporting Lloyd's conviction for murder and felonious assault.

{¶ 60} Lloyd's fifth assignment of error is overruled.

{¶ 61} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN T. GALLAGHER, JUDGE

ANITA LASTER MAYS, P.J., and
MARY EILEEN KILBANE, J., CONCUR